604 A.2d 914

**Sterling Russell HARE, Sr.**

v.

**MOTOR VEHICLE ADMINISTRATION.**

**No. 47, Sept. Term, 1991.**

Court of Appeals of Maryland.

April 14, 1992.

Motion for Reconsideration Denied
June 5, 1992.

Eldridge, J., concurred in result only.

Charles F. Obrecht, Jr. (Obrecht and Obrecht, both on brief), Baltimore, for petitioner.

Edward R.K. Hargadon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Risselle Rosenthal Fleisher, Asst. Atty. Gen., all on brief), Glen Burnie, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

ROBERT M. BELL, Judge.

Sterling Russell Hare, Sr. ("Hare"), petitioned for certiorari, requesting that we consider whether it was fundamentally unfair for his driver's license to be suspended for his refusal to take a chemical test for alcohol concentration when he was not advised that if he took the test and failed, but met certain conditions, the Motor Vehicle Administration ("MVA"), could modify the suspension or issue a restrictive license. We granted the petition and now affirm.

## I.

Hare was stopped on suspicion of driving while intoxicated and subsequently arrested on that charge. Having refused to take a chemical test for alcohol concentration, he requested a hearing to show cause why his license should

not be suspended. At that hearing, the following facts were developed. Officer Howard Jones, Jr. observed Hare driving erratically, almost striking several parked cars. He stopped Hare and, at that time, made certain observations which led him to place Hare under arrest. He noticed that there was a strong odor of alcohol on Hare's breath, that Hare staggered when he walked, that his speech was slurred, and that he had "wet" his pants. At the Central District Police Station, Officer Jones read from the DR–15 advice of rights form, advising Hare that, as relevant to this case:

> You have the right to submit to the test. Your refusal shall result in an administrative suspension of your Maryland driver's license or your driving privilege if you are a nonresident. The suspension by the Motor Vehicle Administration shall be for 120 days for a first offense and one year for a second or subsequent offense.
>
> If you submit to a test which indicates an alcohol concentration of 0.10 or more, it shall result in an administrative suspension of your Maryland driver's license or your driving privilege if you are a non-resident. The suspension by the Motor Vehicle Administration shall be for 45 days for a first offense and 90 days for a second or subsequent offense.

*See* Maryland Code (1977, 1987 Repl.Vol., 1991 Cum.Supp.) § 16–205.1 *et seq.* of the Transportation Article.[1] This form did not refer to § 16–205.1(m),[2] which permits the Motor

---

**1.** Unless otherwise indicated, all references are to the current version of statute.

**2.** That section provides:
(m) Modification of suspension.—(1) The Administration may modify a suspension under this section or issue a restrictive license if:
(i) The licensee did not refuse to take a test;
(ii) The licensee has not had a license suspended under this section during the past 5 years;
(iii) The licensee has not been convicted under § 21–902 of this article during the past 5 years; and
(iv) 1. The licensee is required to drive a motor vehicle in the course of employment;

Vehicle Administration to modify a suspension or issue a restrictive license. Nor did Officer Jones, who was himself unaware that a driver who refused the test was ineligible for modification of suspension or a restrictive license, advise Hare of that consequence of refusal.[3] Hare testified that he, too, was unaware of that consequence of refusing the test and that, had he known, he probably would have taken the test.

Following the hearing, the Administrative Law Judge (ALJ) made the findings required by § 16–205.1(f)(8)(i), that: (1) Officer Jones had reasonable grounds to believe Hare was driving while intoxicated; (2) there was evidence of alcohol consumption, (3) Hare was "fully advised of the administrative sanctions that shall be imposed"; and (4) Hare refused the test. Consequently, pursuant to § 16–205.1(f)(8)(v), he suspended Hare's license for 120 days.

■ On appeal to the Circuit Court for Baltimore County, Hare argued that he had not been fully advised of the "administrative sanctions that shall be imposed" when he refused to take the chemical test. Specifically, he urged

---

2. The license is required for the purpose of attending an alcoholic prevention or treatment program; or

3. It finds that the licensee has no alternative means of transportation available to or from the licensee's place of employment and, without the license, the licensee's ability to earn a living would be severely impaired.

(2) If the licensee refused to take a test, the Administration may not modify a suspension under this section or issue a restrictive license.
The 1991 amendments, *see* Acts 1991, Ch. 81, do not affect the issues in this case.

This section was added by Acts 1989, Ch. 284, effective, January 1, 1990. Previously, the Motor Vehicle Administration retained the discretion to modify the suspension of a driver's license or issue a restrictive license whether that driver took the test, or refused it. *See* Maryland Code (1977, 1987 Repl.Vol.) § 16–205.1(f)(5) of the Transportation Article.

**3.** Hare disputed the officer's testimony concerning the advice he received about taking the chemical test. He testified that the officer told him that he was going to take his license whether he took the test or not.

that non-eligibility for a modification of suspension or a restrictive license of a person who refuses the test is "an administrative sanction" of which he should have been advised pursuant to § 16–205.1(b)(2)(iii) [4] and that he was denied due process when he was not so advised.

We have today held that § 16–205.1(b)(2)(iii) does not require a police officer to advise a driver of the mere possible eligibility for a modification of suspension or a restrictive license should that driver take and fail a chemical test. *Motor Vehicle Administration v. Chamberlain,* 326 Md. 306, 316–17, 604 A.2d 919, 923–24 (1992). The only advice that the officer must give the driver, we said, is that which is specifically set out in § 16–205.1(b)(1). [5] 326 Md. at 317, 604 A.2d at 924. To the extent that Hare's argument depends upon the construction of § 16–205.1, *Chamberlain*

---

**4.** (2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while intoxicated ... and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:

\* \* \* \* \* \*

(iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.10 or more at the time of testing.

**5.** (b) *No compulsion to take chemical test; consequences of refusal.*— (1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.10 or more, the Administration shall:

(i) In the case of a person licensed under this title:

1. For a test result indicating an alcohol concentration of 0.10 or more at the time of testing:

A. For a first offense, suspend the driver's license for 45 days; or

B. For a second or subsequent offense, suspend the driver's license for 90 days; or

2. For a test refusal:

A. For a first offense, suspend the driver's license for 120 days; or

B. For a second or subsequent offense, suspend the driver's license for 1 year....

is dispositive.[6]

## II.

Hare's principal argument is that it is fundamentally unfair, hence, a denial of due process, to suspend a driver's license without first advising the driver "fully" of the applicable administrative sanctions. The MVA characterizes this argument as seeking to require advice as to "all of the different possible outcomes of a hearing, depending on whether the licensee takes the test and fails or refuses the test." However characterized, the argument is not persuasive. Accordingly, we hold that Hare was not denied due process.

"The continued possession of a driver's license ... may become essential to earning a livelihood; as such, it is an entitlement which cannot be taken without the due process mandated by the Fourteenth Amendment." *Sites v. State,* 300 Md. 702, 717, 481 A.2d 192, 200 (1984), citing *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) and *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *See also Brosan v. Cochran,* 307 Md. 662, 672, 516 A.2d 970, 975 (1986). Under § 16–205.1(f)(8)(v), if certain

---

**6.** Hare makes an argument that was not presented in *Chamberlain.* He asserts, notwithstanding the requirement of § 16–205.1(f)(8)(i) that the Administration suspend the driver's license if it finds all four of the prerequisites, "if the test is taken and failed, the suspension of 45 days provided in the statute is *not* mandated because the Administrative Judge may modify the suspension." (Emphasis in original). In other words, he maintains that the possibility of modification renders the license suspension nonmandatory. We reject that argument. Unless there is a license suspension, there is nothing to modify or any need to issue a restrictive license. Consistent with the provisions of § 16–205.1(m), Webster's Third New International Dictionary (1986), p. 1452, defines "modify" as "to make more temperate and less extreme: lessen the severity of: moderate." In Black's Law Dictionary, (5th ed.) the definition is: "To alter; to change in incidental or subordinate features; enlarge, extend; amend; limit; reduce."

Nor is Hare's position improved because § 16–405 allows "the hearing officer [to] decline to order the suspension or revocation." That section excepts § 16–205.1, in which, as we have seen, subsection (m) speaks only in terms of "modification."

conditions, not here relevant, are met, *see* § 16–205.1(f)(8)(i), whether a driver refuses to take a chemical test for alcohol concentration, or takes it and fails, *i.e.*, the test results reveal an alcohol concentration of 0.10 or more, the driver's license will be suspended. There is, however, a significant difference between the length of the suspension depending upon whether the test was refused or failed: the suspension for refusal is more than twice as long as for failing the test. But there are other consequences attendant to a test refusal that do not apply to a test failure. A driver who refuses the test may not have his or her license suspension modified or be issued a restrictive license. § 16–205.1(m)(2). Furthermore, that driver's insurance company could consider the suspension in increasing the driver's insurance premiums, Maryland Code (1957, 1991 Repl.Vol.) Art. 48A §§ 242(c)(7)(iv) and 244D(e)(4); *see* § 16–117(b)(2), or to reject or cancel the driver's policy. Section 243D(a) and (c). As under the old law, the Maryland statute does deliberately give a driver a choice between potential sanctions affecting vitally different interests. *Sites*, 300 Md. at 717, 481 A.2d at 200. "Thus, drunk driving suspects have a significant interest at stake in deciding whether to submit to the State-administered chemical sobriety test." *Brosan*, 307 Md. at 672, 516 A.2d at 975. If they refuse the test, as we have seen, their licenses will be suspended, without possibility of modification or of obtaining restrictive licenses, and the suspensions may be considered by insurance companies in setting insurance premiums. If, on the other hand, they take the test and fail, their licenses will be suspended for a shorter period, but the suspensions could be modified or restrictive licenses issued and, if it is for a first offense of driving with an alcohol concentration of 0.10, the suspension may not be considered by an insurance company in setting insurance premiums.

We have already held that § 16–205.1 requires only that the driver be informed of the certainty, and length, of suspension for refusal, as well as for failure, of the test. The critical inquiry, therefore, is whether due process re-

quires the officer also to advise a refusing driver of either or both of the other consequences we have identified.

What process a defendant is due is, of course, dependent upon the facts and circumstances of the case. *Sites,* 300 Md. at 716, 481 A.2d at 199 ("the exact contours of the due process right are not definable with precision"); *see also Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675, 688 (1983); *Brosan,* 307 Md. at 671, 516 A.2d at 975. To make that determination, we have to "examine the importance of the life, liberty, or property interest at stake and the extent to which the questioned procedure might produce the possibility of uninformed decision-making. Against the individual's interest, [we] must weigh the State's legitimate competing interest, which necessarily includes the avoidance of the increased administrative or fiscal burdens resulting from the requested procedure." *Brosan,* 307 Md. at 671–72, 516 A.2d at 975, citing *Matthews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976).

As we have seen, Hare's interest in his driver's license is an important one. Juxtaposed against that interest is the State's interest in protecting its citizens from drunk drivers and, as a means of doing so, encouraging suspected drunk drivers to take the test, thus facilitating their prosecution. *See State v. Werkheiser,* 299 Md. 529, 533, 474 A.2d 898, 900 (1984). *See also Motor Vehicle Administration v. Shrader,* 324 Md. 454, 464, 597 A.2d 939, 944 (1991). The final factor to be considered is whether the procedure chosen enhances informed decision-making.

The statute, as we have seen, mandates that a driver be given advice which contrasts the consequence of a refusal of the test with that for a failure of the test. That contrast is stark enough—the length of the suspension in the former case being twice as long as in the latter—to be an incentive, by itself, to take the test. Hare suggests that, because § 16–205.1(m) provides a further incentive for taking the test—by taking the test the driver remains eligible for a modification of suspension or a restrictive license—as a

matter of due process, he should have been advised of it. Interestingly, he does not argue that the insurance considerations ought be treated similarly. Nor does he explain why they should not.

Although an interesting argument, we do not believe that due process, either under the Fourteenth Amendment or under Art. 24 of the Declaration of Rights of the Maryland Constitution requires that result. A driver need not be told of every conceivable incentive for taking a chemical test for alcohol or, for that matter, even one additional incentive not required by the statute. This conclusion is, we think, buttressed both by Maryland law and common sense. As to the latter, when it is once determined that a driver must be apprised of additional incentives, there is no rational basis for determining which of those additional incentives must be covered and which are not of sufficient value to merit inclusion in the advice given the arrestee. *See Chamberlain*, 326 Md. at 319, 604 A.2d at 925.

Our cases teach that due process does not always require the State affirmatively to inform a defendant of the availability of options that might influence decision-making. It requires no more than that the State not mislead the defendant or construct road blocks, thus unduly burdening that decision-making. *See McAvoy v. State*, 314 Md. 509, 551 A.2d 875 (1989). *See also Sites* and *Brosan*, both *supra*.

In *Sites*, we found a violation of the fundamental fairness aspect of due process when a police officer refused the defendant's request to telephone his attorney, when that would not have "substantially interfere[d] with the timely and efficacious administration of the testing process." 300 Md. at 717–18, 481 A.2d at 200. That holding was extended in *Brosan* to permit a face-to-face consultation between attorney and client, and the administration of a private test for alcohol concentration by the attorney, so long as it did not interfere with the State's testing process. 307 Md. at 673–74, 516 A.2d at 976.

*McAvoy*, on the other hand, recognized the limits of the *Sites* and *Brosan* holdings. In that case, we characterized the *Sites* holding as a recognition of "a deprivation of the right of due process by the unnecessary denial of a specific request for counsel," 314 Md. at 519, 551 A.2d at 880, explaining: "McAvoy did enjoy the due process rights we recognized in *Sites* and refined in *Brosan*. Those rights did not, however, entitle him to advice of his right to counsel...." 314 Md. at 520, 551 A.2d at 880. Thus, we refused to place an additional affirmative duty on the State. *See also Darrikhuma v. State*, in which the Court of Special Appeals, following *McAvoy*, rejected an argument that due process required the State to advise a defendant of the *Sites* and *Brosan* holdings. 81 Md.App. 560, 573–74, 568 A.2d 1150, 1157, *cert. denied*, 319 Md. 581, 573 A.2d 1337 (1990).

Courts in other jurisdictions take the same approach. *Com. v. Crowell*, 403 Mass. 381, 529 N.E.2d 1339, 1342 (1988) (due process does not require advice of consequences of failure of breath test over and above that required by statute); *Hess v. Turner*, 129 N.H. 491, 529 A.2d 386, 387 (1987) (implied consent law does not require police to inform driver arrested for driving under the influence of the imposition of a non-concurrent additional penalty to revocation); *State v. Jenkins*, 128 N.H. 672, 517 A.2d 1182, 1184 (1986) (due process does not require, as part of the implied consent warning, that a defendant arrested for driving under the influence be told all potential consequences of submitting to a chemical test for alcohol); *State v. Mercer*, 211 N.J.Super. 388, 511 A.2d 1233, 1235 (1986) (due process does not require the police officer to inform defendant of the right to an independent blood alcohol test); *State v. Newton*, 291 Or. 788, 636 P.2d 393, 407 (1981) ("Freedom from interference with liberty ... is different from entitlement to a right. The state is barred from unlawfully restricting liberty, but it is not obliged to itemize to a person all the actions he is free to take nor to provide an indigent person with the means to exercise his freedom as a precondition to

the state's taking action."); *Provo City v. Werner,* 810 P.2d 469, 473 (Utah App.1991) (due process does not require the police to assist in obtaining an independent chemical test unless expressly required to do so by statute).

Having provided the advice mandated by the statute, the police officer was not required to anticipate, or guess at, what incentive would have caused the driver to take the chemical test. Nor was he, as a matter of due process, required to provide any advice other than that the statute prescribed. Indeed, had he undertaken to provide additional information and it turned out to be misleading or inaccurate, that, in itself, may have been a denial of due process. Cf. *Morales v. State,* 325 Md. 330, 335, 600 A.2d 851, 853 (1992).

Due process does not require the officer to weigh the relative merits, for encouragement value, of particular consequences flowing from the decision whether to take or refuse a chemical test.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

ELDRIDGE, J., concurs in the result only.