664 A.2d 911

**Robert Charles EMBREY**

v.

**MOTOR VEHICLE ADMINISTRATION.**

**No. 6, Sept. Term, 1995.**

Court of Appeals of Maryland.

Sept. 15, 1995.

John Patrick Kudel (John Patrick Kudel, P.A., on brief), Rockville, for petitioner.

Hillel Traub, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

The issue this case presents is whether, pursuant to Maryland Code (1977, 1992 Repl.Vol., 1994 Cum.Supp.) § 16–

.

205.1(n)(ii) of the Transportation Article,[1] a motorist, who, as a result of a prior detention on suspicion of driving or attempting to drive while intoxicated or under the influence of alcohol and after failing a breath test for blood alcohol concentration [2], has before been issued a restricted driver's license for employment is entitled to the issuance of another modified or restricted license for a second breath test failure occurring within five years of the first such failure. This issue requires us to interpret § 16–205.1(n)(ii). The Administrative Law Judge [3] (ALJ) construed that section to prohibit the issuance of a restricted license in this case and the circuit court agreed. We shall affirm those decisions.

## I.

On March 25, 1994, Robert Charles Embrey, the petitioner, was stopped by a Montgomery County police officer for driving while intoxicated. According to the Officer's Certification

---

1. Maryland Code (1977, 1992 Repl.Vol., 1994 Cum.Supp.) § 16–205.1 is Maryland's "implied consent" and "administrative per se" law against drunk driving. "It provides for swift administrative action to suspend the drivers' licenses of drivers who, after a police officer has stated reasonable grounds to believe that the individual is driving under the influence of alcohol, either refuse to take the test or who take the test and are found to have an alcohol concentration of 0.10 or greater." *Motor Vehicle Admin. v. Gaddy*, 335 Md. 342, 344, n. 1 643 A.2d 442, 443, n. 1 (1994).

    Unless otherwise indicated, all future references are to the Transportation Article.

2. In *Motor Vehicle Admin. v. Chamberlain*, 326 Md. 306, 308, 604 A.2d 919, 920 (1992), we characterized test results revealing an alcohol concentration of 0.10 or more as "taking and failing [a breath] test."

3. Maryland Code (1977, 1992 Repl.Vol.) § 12–104(e)(2) of the Transportation Article empowers The Motor Vehicle Administration "to delegate to the Office of Administrative Hearings the power and authority under the Maryland Vehicle Law to render final decisions in hearings conducted under ... Title 16, Subtitles 1 through 4 of this article." The Administration has chosen that option. *See* Md.Regs.Code tit. 11, § 11.11.02.08 (1992) (COMAR). An Administrative Law Judge is a part of the Office of Administrative Hearings. *See* Maryland Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.) § 9–1605 of the State Government Article.

and Order of Suspension, Form DR–15A, the officer observed the petitioner driving his car at a high rate of speed. After stopping the petitioner, the officer noted a strong odor of alcohol, whereupon he directed the petitioner to perform certain field sobriety tests. As a result of his poor performance on the tests, the petitioner was placed under arrest and charged with driving while intoxicated.

The petitioner agreed to take a breath test. Based upon the test result, which indicated an alcohol concentration of 0.13, and pursuant to § 16–205.1(b)(3), the arresting officer, *inter alia*, confiscated the petitioner's driver's license and served him with an order of suspension. As was his right, *see* § 16–205.1(f), the petitioner requested an administrative hearing to show cause why his driver's license should not be suspended.

At that hearing, the ALJ introduced, on behalf of the Motor Vehicle Administration, the respondent, without objection, *inter alia*, the Officer's Certification and Order of Suspension; Form DR–15, an Advice of Rights Form, *see Motor Vehicle Admin. v. Chamberlain*, 326 Md. 306, 309, 604 A.2d 919, 920 (1992); the breathalyzer test results; and a copy of the petitioner's driving record. The petitioner then testified that he needs a license to attend alcohol prevention or treatment programs and for his employment. He acknowledged that, in 1991, he had received a restricted license as a result of a prior proceeding pursuant to § 16–205.1. The petitioner argued, however, that, although this was his second offense, a suspension was not mandatory because he never was suspended for his first offense. Noting that, on the prior occasions, he had been issued a thirty day restricted license [4], he points out that his driver's record reflected no suspension of his license on that occasion. Believing that the petitioner was not eligible for a modified or restricted license, having resolved the issues

---

**4.** The appellant qualified for a restricted license, pursuant to § 16–205.1(m), the predecessor to § 16–205.1(n), because he did not refuse to take the breathalyzer test, had not been convicted under § 21–902, nor had his license been suspended within the previous 5 years, and he needed his license for employment purposes.

to be decided at the hearing against him,[5] the ALJ suspended the petitioner's driver's license for ninety days. She rejected the petitioner's request that the suspension be modified to a restricted license, reasoning that the prior suspension of the petitioner's license for a test failure, occurring within five years of the instant failure, rendered him ineligible for a modified or restricted license.[6]

---

**5.** Section 16–205.1(f)(7)(i) sets forth the issues to be decided at the hearing:

1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while intoxicated, while under the influence of alcohol, while so far under the influence of any drug or, or any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, any combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test is ineligible for modification of a suspension or issuance of a restrictive license;

4. Whether the person refused to take the test;

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.10 or more at the time of testing; or

6. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle.

**6.** The ALJ opined,

Now, the focus of this whole case is whether this is a first offense or a second offense, because in a second offense you—if I make these findings that the police officer did everything properly, if your tests results are over 0.10, which they were, then you get a 90–day suspension because you are prohibited from any kind of modification, a restricted license, if its a second offense. Now your attorney has said, the first one really didn't result in a suspension. I don't—I understand the argument. I don't agree with the argument. You did get a restricted license, but your privileges were suspended. All of your driving privileges except for driving to work and education purposes were suspended, pursuant to section 16–205.1 of the Code which is the same section. That, in fact, is a suspension that was subsequently modified by Judge Wallace. It counts as a suspension.

The petitioner sought judicial review of that decision in the Circuit Court for Montgomery County, which affirmed the decision of the ALJ.[7] The petitioner then timely filed a petition for certiorari, pursuant to Maryland Code (1984, 1995 Repl.Vol.), § 12–305 of the Courts and Judicial Proceedings Article [8], which we granted.

## II.

The petitioner's arguments before this Court are much the same as his arguments before the ALJ. He maintains that his prior test failure resulted in the issuance of a restricted license, not a suspension of that license. The MVA maintains, on the other hand, that the petitioner is not entitled to have another restricted license issued to him because, on the previous occasion, his license was suspended pursuant to § 16–205.1. It argues that a restricted license can only be issued

---

**7.** Maryland Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), § 10–222(h) of the State Government Article provides, in pertinent part:

In a proceeding under this section, the court may:

\* \* \* \* \* \*

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion or decision of the final decision maker:

(i) is unconstitutional;
(ii) exceeds the statutory authority or jurisdiction of the agency;
(iii) results from an unlawful procedure;
(iv) is affected by any other error of law;
(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
(vi) is arbitrary or capricious.

**8.** Maryland Code (1984, 1995 Repl.Vol.), § 12–305 of the Courts and Judicial Proceedings Article provides:

The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court or has rendered a final judgment on appeal from an administrative decision under Title 16 of the Transportation Article if it appears to the Court of Appeals, upon petition of a party that: (1) Review is necessary to secure uniformity of decision, as where the same statute has been construed differently by two or more judges; or (2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed.

after an individual's privilege to drive has been suspended, that, in other words, the issuance of a restricted license is, in effect, a modification of a suspended license. The petitioner counters that an individual's license need not first be suspended in order that a restricted license be issued.

## III.

It is well settled that " " '[a] statute is to be construed reasonably and with reference to the Legislature's purpose, aim or policy as reflected in that statute.' " " *Motor Vehicle Administration v. Vermeersch,* 331 Md. 188, 194, 626 A.2d 972, 975 (1993) (quoting *Motor Vehicle Administration v. Shrader,* 324 Md. 454, 463, 597 A.2d 939, 943 (1991) (quoting *Kaczorowski v. City of Baltimore,* 309 Md. 505, 514, 525 A.2d 628, 632 (1987))). " '[R]esults that are unreasonable, illogical, or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning.' " *Shrader,* 324 Md. at 463, 597 A.2d at 943 (quoting *Potter v. Bethesda Fire Dep't,* 309 Md. 347, 353, 524 A.2d 61, 64 (1987) (quoting *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275, 278 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976))).

We have consistently held that the Legislature's purpose in enacting Maryland's Drunk Driving statutes was to protect the public, and not the accused. In referring to those laws, we noted in *Vermeersch,* that:

> One of the methods the Legislature chose to accomplish that purpose [to protect the public from drunk drivers] was to provide an incentive for drivers detained under suspicion of drunk driving to take, rather than refuse, a test for alcohol concentration.

331 Md. at 194, 626 A.2d at 975, (citing *Shrader,* 324 Md. at 464, 597 A.2d at 944); *Chamberlain,* 326 Md. at 313, 604 A.2d at 922 (1992). On the other hand, this Court pointed out that, by submitting to a breathalyzer test and failing such a test,

[t]he Legislature contemplated not only that, "[t]he suspension of the driver's license must occur whenever the statutory prerequisites have been met, § 16–205.1(f)(8)(v)," but that the sanction applicable to the option the driver chose also occur.

*Vermeersch,* 331 Md. at 194, 626 A.2d at 975.

Section 16–205.1 provides for two instances in which a driver's license could be suspended for drunken driving: (1) when the driver refuses to take a test for alcohol concentration and (2) when the driver takes a test to determine alcohol concentration and fails the test. Section 16–205.1(f)(8)(i) provides that, after a hearing, at which all of the conditions precedent have been satisfied, *see Chamberlain,* 326 Md. at 331, 604 A.2d at 921, including the fact that "[a] test . . . was taken and the result indicated an alcohol concentration of 0.10 or more," the motorist's "driver's license shall be suspended." [9] Section 16–205.1(f)(8)(v) prescribes the length of the suspension:

(v) The suspension imposed *shall* be:

1. For a test result indicating an alcohol concentration of 0.10 or more . . .

A. For a first offense, a suspension of 45 days; or

---

**9.** Section 16–205.1(f)(8)(i) provides, in pertinent part, that a driver's license *shall* be suspended after a hearing if:
1. The police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive while intoxicated, while under the influence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;
2. There was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;
3. The police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed; and
4. A. The person refused to take the test; or
B. A test to determine alcohol concentration was taken and the test result indicated an alcohol concentration of 0.10 or more at the time of testing. (Emphasis added).

B. For a second or subsequent offense, a suspension for 90 days . . . (emphasis added).

It is clear, therefore, that the suspension of the driver's license is mandatory.

A driver who takes and fails the test may be eligible, however, for a suspension modification. Section 16–205.1(n) provides that the MVA may modify a suspension or issue a restrictive license if the licensee demonstrates that:

(i) The licensee did not refuse to take a test;

(ii) The licensee has not had a license suspended under this section during the past 5 years;

(iii) The licensee has not been convicted under § 21–902 of this article during the past 5 years; and

(iv) 1. The licensee is required to drive a motor vehicle in the course of employment;

2. The licensee is required for the purpose of attending alcoholic prevention or treatment program; or

3. It finds that the licensee has no alternative means of transportation available to or from the licensee's place of employment and, without the license, the licensee's ability to earn a living would be severely impaired.

When permitted, modification of a suspended license or issuance of a restricted license is discretionary with the ALJ. It is clear, however, that the ALJ may consider that option only after he or she has determined that the mandatory suspension applies.[10] Thus, the issuance of a restricted license is, as the MVA maintains, a two-step process. First, the driver's license is suspended pursuant to § 16–205.1. Second, the ALJ exer-

---

**10.** In the Code of Maryland Regulations (COMAR), the MVA interprets this provision as permitting a modification of a suspension or issuance of a restrictive license only if "the licensee has not had a license suspended or been issued a restrictive license under Transportation Article § 16–205.1, Annotated Code of Maryland, during the past 5 years." COMAR 11.11.03.09(C)(1). This interpretation is entitled to great deference. *See Magan v. Medical Mutual,* 331 Md. 535, 546, 629 A.2d 626, 631–32 (1993); *Morris v. Prince George's County,* 319 Md. 597, 613, 573 A.2d 1346, 1354 (1990); *Baltimore Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307, 1315 (1986).

cises his or her discretion to modify the suspension and issue a restricted license. That being so, § 16–205.1(n)(ii) applies whenever a driver has previously been issued a restricted license within a 5 year period.

This Court implicitly addressed, and rejected, the petitioner's argument in *Hare v. Motor Vehicle Administration*, 326 Md. 296, 301 n. 6, 604 A.2d 914, 916 n. 6 (1992). In that case responding to a related argument, this Court opined:

> Hare makes an argument that was not presented in *Chamberlain*. He asserts, notwithstanding the requirement of § 16–205.1(f)(8)(i) that the Administration suspend the driver's license if it finds all four of the prerequisites, "if the test is taken and failed, the suspension of 45 days provided in the statute is *not* mandated because the Administrative Law Judge may modify the suspension." (Emphasis in original). In other words, he maintains that the possibility of modification renders the license suspension nonmandatory. We reject that argument. Unless there is a license suspension, there is nothing to modify or any need to issue a restrictive license. Consistent with the provisions of § 16–205.1(m), Webster's Third New International Dictionary (1986), p. 1452, defines "modify" as "to make more temperate and less extreme: lessen the severity of: moderate." In Black's Law Dictionary, (5th ed.) the definition is "To alter; to change in incidental or subordinate features; enlarge, extend; amend; limit; reduce."

In light of the clear legislative intent behind the Administrative *Per Se* law, § 16–205.1, it would be "unreasonable, illogical, or inconsistent with common sense" to construe that section to mean that the prior administrative proceeding resulting in the petitioner being issued a restricted license did not also result in a suspension of the petitioner's license. That interpretation would wholly undermine the Legislature's efforts to combat drunk driving. Thus, restating our position in *Hare*, we hold that "[u]nless there is a license suspension, there is nothing to modify or any need to issue a restrictive license." *Id.*

*JUDGMENT AFFIRMED WITH COSTS.*