758 A.2d 1124

**Glenn Lydell MEANOR**

v.

**STATE of Maryland.**

**No. 2117, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Sept. 7, 2000.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Marna McLendon, State's Atty. for Howard County, Ellicott City, on the brief), for appellee.

Argued before WENNER, KRAUSER and ROBERT F. FISCHER (retired, specially assigned), JJ.

WENNER, Judge.

Appellant, Glenn Lydell Meanor, was convicted by a jury in the Circuit Court for Howard County of driving while intoxicated, driving under the influence of alcohol, and failure to obey a traffic control device, and was sentenced to a term of

90 days, of which all was suspended in favor of two years supervised probation with special conditions. On appeal, appellant presents us with the following questions:

1. Did the trial court err in instructing the jury, "If you find that at the time of testing, the Defendant had .10 percent or more by weight of alcohol in the blood, the Defendant was intoxicated," where Mr. Meanor was not charged with the offense of driving while intoxicated per se?

2. Did the trial court err in denying the motion to suppress the results of the breath test?

Finding no error, we shall affirm the judgments of the circuit court.

### Facts

On 11 February 1999, appellant and a friend, Charles Dixon, enjoyed numerous alcoholic beverages at the Silver Shadows nightclub in Columbia, Maryland. As they were leaving the club at about 2:30 a.m., it was decided that Dixon would drive because appellant had had "too much to drink." Shortly thereafter, Officer Mui of the Howard County Police Department observed a car being driven erratically on Route 29, and stopped it. Both Officer Mui and Sgt. Christis, who arrived on the scene as Officer Mui's back-up, noticed an odor of an alcoholic beverage emanating from Dixon's breath, and that his speech was slurred. After Dixon had performed rather poorly on several field sobriety tests and had blown into the tube, he was arrested, charged with driving while intoxicated, and taken to the police station. Before leaving the scene, the officers several times warned appellant not to drive, and offered to transport him either to a pay phone or to the police station to call for a ride. In addition, the officers offered to arrange to have the car towed. Appellant insisted on remaining with the car, however, and said that he would use his cellular phone to call for a ride. Although Officer Mui left the scene, Sgt. Christis drove a short distance and pulled off onto the shoulder in order to keep appellant and the car in view. Just as Sgt. Christis expected, in no more than twenty min-

utes, the car pulled onto the traveled portion of Route 29 driven by appellant. Sgt. Christis followed and stopped the car, after observing that it had crossed over the center line. After appellant had gotten out of the car and performed poorly on several field sobriety tests, he was arrested and issued a Maryland Uniform Complaint and Citation form, for violating "21–902 Driving While Intoxicated & Under Influence Alcohol & Under Influence of Drugs and & Drugs & Alcohol & Controlled Dangerous Substance."

Not only was appellant offered a breathalyzer test, he was read his rights from a "DR–15 Advice of Rights form." Appellant first refused to take the test, but later changed his mind and took the test. The test result was "[p]oint one three grams of alcohol per two hundred ten liters of breath."

After being convicted by a jury of driving while intoxicated, driving under the influence of alcohol, and failure to obey a traffic control device, appellant was sentenced to a term of ninety days in the county jail for driving while intoxicated, after the remaining charges were merged for sentencing purposes. As we have noted, the term of ninety days was suspended in favor of two years supervised probation with special conditions, and this appeal followed.

### Discussion

The questions with which we are presented appear to be questions of first impression in Maryland. We have not been directed to, nor have we found a reported Maryland case that involves driving while intoxicated per se, or one that involves the failure of the 1994 DR–15 Advice of Rights form to mention the Ignition Interlock System Program. Although there have been several cases involving the advice required to be given concerning the consequences of refusing to submit to a chemical test for intoxication, prescribed by § 16–205.1 of the Transportation Article, we are concerned only, in the case at hand, with use of the 1994 DR–15 form. We now turn to these issues.

## I.  Driving While Intoxicated Per Se

Appellant first contends that, as he was not charged with driving while intoxicated per se, the trial court erred in instructing the jury, "If you find that at the time of testing, the defendant had .10% or more by weight of alcohol in the blood, the defendant was intoxicated." We do not agree. Before beginning our discussion, we shall first review the offenses with which appellant was charged.

### A.

As we have, noted, appellant was charged with having violated § 21–902 of the Transportation Article.[1] In filling out the Maryland Uniform Complaint and Citation form, Sgt. Christis circled violation number 33, which read, " § 21–902 Driving While Intoxicated & Under Influence Alcohol & Under Influence of Drugs, & Drugs & Alcohol & Controlled Dangerous Substance." According to appellant, violation number 33 does not encompass driving while intoxicated per se. We disagree.

Section 21–902 of the Transportation Article is titled "Driving while intoxicated, while intoxicated per se, under the influence of alcohol, or under the influence of a drug, a combination of alcohol and a drug, or a controlled dangerous substance," and includes the following four subsections:

(a) *Driving while intoxicated or intoxicated per se.*—(1)  A person may not drive or attempt to drive any vehicle while intoxicated.

(2) A person may not drive or attempt to drive any vehicle while the person is intoxicated per se.

(b) *Driving while under the influence of alcohol.*—A person may not drive or attempt to drive any vehicle while under the influence of alcohol.

(c) *Driving while under influence of drugs or drugs and alcohol.*—(1)  A person may not drive or attempt to drive

---

1.  Unless otherwise noted, all statutory references will be to Md.Code (1977, 1999 Repl.Vol., 1999 Cum.Supp.) Transportation Article.

any vehicle while he is so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that he cannot drive a vehicle safely.

. . .

**(d)** *Driving while under influence of controlled dangerous substance.*—A person may not drive or attempt to drive any vehicle while he is under the influence of any controlled dangerous substance, as that term is defined in article 27, § 279 of the Code, if the person is not entitled to use the controlled dangerous substance under the laws of this State.

▪ According to appellant, although the citation he was issued charged him with violating §§ 21–902(a)(1), (b), (c) and (d), he was not charged with violating § 21–902(a)(2). Appellant insists that driving or attempting to drive any vehicle while the person is intoxicated per se constitutes a separate offense from driving while intoxicated, and must be written on the citation in the section titled: "VIOLATION NOT LISTED ABOVE CHARGE." In the State's view, however, "the definition of 'intoxicated per se' sets forth an evidentiary standard and does not create a crime distinct from driving while intoxicated; it is the same crime proven by a scientific test of evidence." We agree.

The legislative history of § 21–902(a)(2) demonstrates that what once was "prima facie evidence of intoxication,"[2] is now legally intoxicated. Prior to October 1995, § 21–902(a) provided *"Driving while intoxicated.*—A person may not drive or attempt to drive any vehicle while intoxicated." Courts and Judicial Proceedings Article, § 10–307 also provided in relevant part:

(e) *Prima facie evidence of intoxication.*—If at the time of testing a person has an alcohol concentration of 0.10 or more, as determined by an analysis of the person's blood or breath, it shall be prima facie evidence that the defendant was driving while intoxicated.

---

**2.** *See* Md.Code (1974, 1995 Repl.Vol., 1999 Cum.Supp.) Courts & Judicial Proceedings Article § 10–307.

In October of 1995, subsection (e) of § 10–307 was repealed, and § 21–902(a) was amended to read as follows:

(a)(1) A person may not drive or attempt to drive any vehicle while intoxicated.

(2) A person may not drive or attempt to drive any vehicle while the person has an alcohol concentration of 0.10 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath as determined at the time of testing.

1995 Md. Laws, Chap. 498. During the following term, the General Assembly amended § 21–902(a)(2) to read, as it now reads, "(2) A person may not drive or attempt to drive any vehicle while the person is intoxicated per se," and enacted § 11–127.1 which defines intoxicated per se as "having an alcohol concentration at the time of testing of 0.10 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." 1996 Md. Laws, Chap. 652.

This 1996 amendment substituted "is driving while intoxicated per se" for "has an alcohol concentration of 0.10 or more as measured by grams of alcohol per 100 millimeters of blood or grams of alcohol per 210 liters of breath as determined at the time of testing." 1995 Md. Laws, Chap. 652. Thus, the General Assembly chose to add the language, "A person may not drive or attempt to drive while the person is intoxicated per se" to § 21–902(a) to define a person who was driving a vehicle while intoxicated.

The terms "driving while intoxicated and intoxicated per se" are treated consistently throughout the Transportation Article. For example, § 27–101 provides that "It is a misdemeanor to violate any of the provisions of the Maryland Vehicle Law ..." and refers only to § 21–902(a),(b),(c), and (d). Section 27–101(k) provides:

(k) *Violation of § 21–902(a).*—(1) Except as provided in subsection (q) of this section, any person who is convicted of a violation of any of the provisions of § 21–902(a) of this article ("Driving while intoxicated or intoxicated per se"):

(i) For a first offense, shall be subject to a fine of not more than $1,000, or imprisonment for not more than 1 year, or both ...

(2) For the purpose of second or subsequent offender penalties for violation of § 21–902(a) of this article provided under this subsection, a prior conviction of § 21–902(b), (c), or (d) of this article, within 5 years of the conviction for a violation of § 21–902(a) of this article, shall be considered a conviction of § 21–902(a) of this article.

We emphasize that § 27–101 refers only to "the provisions of § 21–902(a) of this article (Driving while intoxicated or intoxicated per se)," then specifically refers to prior convictions of § 21–902(b), (c) or (d) in providing penalties for subsequent convictions of violating § 21–902(a). Moreover, the penalties for "Driving while intoxicated or intoxicated per se" are precisely the same, further indicating that § 21–902(a) includes both driving while intoxicated and intoxicated per se.

We look now to the violations lodged against appellant in order to determine whether those violations include driving while intoxicated per se. On the Uniform Complaint and Citation issued to appellant, he was simply charged with violating § 21–902. Section 26–405 provides:

*Lesser included offenses under §§ 21–901.1 and 21–902* —**If a person is charged with a violation of** § 21–901.1 of this article ("Reckless and negligent driving") or **§ 21–902** of this article ("Driving while intoxicated, while intoxicated per se, under the influence of alcohol, or under the influence of a drug, a combination of alcohol and a drug, or a controlled dangerous substance"), **the court may find him guilty of any lesser included offense under any subsection of the respective section.** (Emphasis added.)

Moreover, § 26–405 permits one charged only with violating § 21–902 to be convicted of violating one or more of its subsections. As noted, these subsections include: "Driving while intoxicated, while intoxicated per se, under the influence of alcohol, or under the influence of a drug, a combination of alcohol and a drug, or a controlled dangerous substance."

Although appellant was simply charged with violating § 21–902, as trial began, the prosecutor said, "The State would ask the Court to proceed on § 21–902(a) and (b)." While the verdict sheet submitted to the jury listed driving while intoxicated and driving while under the influence of alcohol, driving while intoxicated per se was not listed. Accordingly, as appellant was convicted only of driving while intoxicated and driving while under the influence of alcohol, there was no need to refer to § 21–902(a)'s separate provisions.

Appellant relies on *Beckwith v. State*, 320 Md. 410, 578 A.2d 220 (1990), to persuade us that he was not charged with § 21–902(a)(2). *Beckwith* was charged with violating § 21–902(a), but convicted of § 21–902(b) and the Court of Appeals explained:

If the police officer had intended to charge the greater offense of driving while intoxicated so as to embrace the lesser offense of driving while under the influence, number 34 would have specifically covered that situation. The police officer, however, did not circle number 34. Instead, number 35, charging only the greater offense driving while intoxicated was circled, as well as underscored. Under these circumstances, a reasonable defendant would conclude that he was being charged with the greater offense and only the greater offense.

The charging document expressly and clearly showed how the greater offense of driving while intoxicated was to be charged so that it would include the lesser offense of driving while under the influence. The defendant was not charged in this manner. Instead, the State charged the defendant with driving while intoxicated in a way which clearly appeared to exclude the lesser charge.

*Id.* at 415, 578 A.2d 220. Hence, *Beckwith*'s conviction of the lesser charge was reversed.

Appellant's reliance on *Beckwith* is misplaced. As noted, Sgt. Christis circled violation number 33, which includes all of § 21–902's lesser included offenses. We do not agree that driving while intoxicated per se was excluded. It was not

necessary for the officer to have specified that charge in the section of the citation entitled "VIOLATION NOT LISTED ABOVE."

We note that if appellant had been specifically charged with violating § 21–902(a)(2), driving while intoxicated per se, the State would have been limited to the "all or nothing" approach described in *Insley v. State*, 32 Md.App. 46, 48, 358 A.2d 246, 247 (1976) (By specifically charging a defendant with § 21–902(a) Driving while intoxicated, the State "forwent the right to drop down to a lesser charge, should its proof fail to result in a conviction of the greater charge.") The general charge is permitted because it would be impractical to require the arresting officer to make a roadside determination as to whether a suspected drunk driver is intoxicated or under the influence, that is above or below .10 alcohol concentration.

Driving while intoxicated and driving under the influence of alcohol "differ only in the grade of proof required to support a conviction," *See Thompson v. State*, 26 Md.App. 442, 450, 338 A.2d 411 (1975) *rev'd on other grounds*, 278 Md. 41, 359 A.2d 203 (1976). In enacting § 21–902(a)(2), the General Assembly provided a method of convicting an accused of driving while intoxicated by a reduced "grade of proof". Scientific evidence has been presented that the alcohol concentration in the blood of an accused is 0.10 or more, the State has established that the accused was driving while intoxicated per se.

In sum, we hold that when an offender has simply been charged with violating § 21–902, the offender may be convicted of violating § 21–902(a), (b), (c) or (d).

### B.

Appellant next contends that the trial court erred in instructing the jury as follows: "if you find that at the time of testing, the defendant had a point one zero percent or more by weight of alcohol in the blood, the defendant was intoxicated." As we have just noted, driving while intoxicated per se is a lesser included offense under § 21–902. The meaning of "intoxicated per se" is "having an alcohol concentration at the

time of testing of 0.10 or more ... " § 11–127.1(a). As the State had presented evidence that appellant's breath test result revealed .13 grams of alcohol per 210 liters of breath, it was, therefore, proper for the jury to be instructed:

Now you've heard evidence in this case that the Defendant's breath was tested for the purposes of determining the alcoholic content of the Defendant's blood. The affect of such results is as follows. If you find that at the time of testing, the Defendant had point one zero percent or more by weight of alcohol in the blood, the defendant was intoxicated.

See MARYLAND CRIMINAL PATTERN JURY INSTRUCTION (MCPJI) 4:10.2. The "Notes on Use" comments following MCPJI Cr 4:10.2 suggest: "Use this instruction if the defendant is charged with ... driving while intoxicated and/or driving under the influence of alcohol under Maryland Transportation Code Ann. § 21–902 (1992 & Supp.1996), and the defendant took a blood or breath test." [3] Accordingly, there was no error.

## II. DR–15 Advice of Rights Form

█ Appellant also urges that the trial court should have suppressed his breath test results because he was not properly advised of his rights from the form DR–15 used by the arresting officer. Form DR–15 was developed by the Motor Vehicle Administration ("MVA") for use in giving a driver charged with driving while intoxicated and/or under the influence of alcohol the rights to which he or she is entitled concerning the possible suspension of his or her driver's license for refusal to take a breath test as provided for in § 16–205.1(b) of the Transportation Article. Section 16–205.1(b) provides in relevant part:

(b)(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police

---

3. See Maryland State Bar Ass'n, Inc., *Maryland Criminal Pattern Jury Instructions,* 4:10.2, at 175 (1997). There is no suggested pattern instruction for driving while intoxicated per se.

officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while intoxicated ... the police officer shall:

(i) Detain the person;

(ii) Request that the person permit a test to be taken; and

(iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test, including ineligibility for modification of a suspension or issuance of a restrictive license under subsection (n)(1) or (2) of this section, and for test results indicating an alcohol concentration of 0.10 or more at the time of testing.

Subsection (n) provides:

Modification of suspension.—(1) The Administration may modify a suspension under this section or issue a restrictive license if:

(i) The licensee did not refuse to take a test;

(ii) The licensee has not had a license suspended under this section during the past 5 years;

(iii) The licensee has not been convicted under § 21–902 of this article during the past five years; and

(iv) 1. The licensee is required to drive a motor vehicle in the course of employment;

2. The license is required for the purpose of attending an alcoholic prevention or treatment program; or

3. It finds that the licensee has no alternative means of transportation available to or from the licensee's place of employment and, without the license, the licensee's ability to earn a living would be severely impaired.

(2) In addition to the authority to modify a suspension or issue a restrictive license under paragraph (1) or (4) of this subsection, the Administration may modify a suspension under this section or issue a restrictive license, including a restriction that prohibits the licensee from driving or attempting to drive a motor vehicle unless the licensee is a

participant in the Ignition Interlock System Program established under § 16–404.1 of this title, if:

(i) The licensee did not refuse to take a test;

(ii) The licensee has not been convicted under § 21–902 of this article; and

(iii) The license is required for the purpose of attending:

1. A noncollegiate educational institution ... or,

2. A regular program at an institution of postsecondary education.

(3) If the licensee refused to take a test, the Administration may not modify a suspension under this section or issue a restrictive license except as provided under paragraph (4) of this subsection.

(4) In addition to the authority to modify a suspension or issue a restrictive license under paragraph (1) or (2) of this subsection, the Administration may modify a suspension under this section or issue a restrictive license to a licensee who participates in the Ignition Interlock System Program ... for at least 1 year.

In the instant case, Sgt. Christis read the following to appellant from the 1994 DR–15 form:

You have the right to refuse to submit to the test. Your refusal shall result in an administrative suspension of your Maryland driver's license or your driving privilege if you are a non-resident. The suspension by the Motor Vehicle Administration shall be 120 days for a first offense and one year for a second or subsequent offense. *If you refuse to submit to the test, you will be ineligible for a modification of a suspension or issuance of a restrictive license.* (Emphasis added.)

Appellant believes this to be both inadequate and inaccurate, because § 16–205.1(b)(2)(iii) requires that an accused be advised that, even if the test is refused, MVA may modify suspension of the driver's license or issue a restrictive license if the offender agrees to a one year participation in the Ignition Interlock System Program. In other words, appel-

lant believes the Form DR–15 used by the arresting officer should have included an explanation of § 16–205.1(n)(4). In addition, appellant believes § 16–205(n)(4) renders inaccurate the final emphasized sentence on Form DR–15.

After closely reviewing § 16–205.1 together with the Form DR–15 used by the arresting officer, we conclude that the provisions of § 16–205.1(b)(2)(iii) were satisfied. Section 16–205.1 requires appellant to be advised of "administrative sanctions" for refusing the test. It does not require the inclusion of subsection (n)(4). It requires only the inclusion of (n)(1) and (2). Since the latter subsections describe options unavailable to one who refuses the breath test, the DR–15 form includes such "sanctions." As the State correctly points out, the "mere possibility that an offender might qualify to participate in the Ignition Interlock System Program" is a privilege or a bonus, not a sanction.

Our conclusion is supported by § 16–205.1's legislative history, as well as the cases that interpreted § 16–205.1 prior to being amended in 1993 and 1998. Prior to being amended in 1993, § 16–205.1(b)(2)(iii) required an arresting officer to:

Advise the person of the administrative sanctions that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.10 or more at the time of testing.

In 1993, § 16–205.1(b)(2)(iii) was amended to require that an arresting officer:

Advise the person of the administrative sanctions that shall be imposed for refusal to take the test, *including ineligibility for modification of a suspension or issuance of a restrictive license,* and for test results indicating an alcohol concentration of 0.10 or more at the time of testing. (Emphasis added.)

1993 Md. Laws, Chap. 407. This amendment was in response to *Hare v. Motor Vehicle Admin.*, 326 Md. 296, 604 A.2d 914 (1992), and *Motor Vehicle Admin. v. Chamberlain*, 326 Md. 306, 604 A.2d 919 (1992), in which the Court of Appeals

considered the advice intended by the legislature to be given a driver by an arresting officer.

In *Hare*, the appellant insisted that he was required to be advised by the arresting officer that if he refused to take the test, he would not be entitled to modification of suspension of his license or to a restrictive license. 326 Md. at 300, 604 A.2d 914. The Court concluded that "[a] driver need not be told of every conceivable incentive for taking a chemical test[.]" *Id.* at 304, 604 A.2d 914.

In *Chamberlain*, the Court said:

Aside from § 16–205.1(b)(1), the critical provisions of the statute refer to "administrative sanctions that shall be imposed;" it is only those of which a driver is required to be informed. Mere potential eligibility for modification of suspension or for a restrictive license is not an "administrative sanction that shall be imposed." Eligibility for modification of suspension or for a restrictive license becomes reality only if the driver meets the statutory prerequisites, *see* § 16–205.1(m) [now subsection n] and, then, only if the ALJ, in the exercise of discretion, finds modification of suspension or issuance of a restrictive license appropriate.

326 Md. at 318, 604 A.2d 919. As the General Assembly chose not to agree, an arresting officer is now required to inform an accused that the refusal to submit to the test will affect the driver's eligibility for a modification of suspension or a restrictive license.

When Chapter 526 of the Acts of 1998 was enacted to expand the use of the Ignition Interlock System Program, § 16–205.1(b)(2)(iii) was amended to its current language:

Advise the person of the administrative sanction that shall be imposed for refusal to take the test, including ineligibility for modification of a suspension or issuance of a restrictive license *under subsection (n)(1) or (2) of this section,* and for test results . . .

(Emphasis added.)

This amendment arose from changes to subsection (n) concerning the Ignition Interlock System Program. The following emphasized language has been added to subsection (n):

> (2) In addition to the authority to modify a suspension or issue a restrictive license under paragraph (1) **or (4)** of this subsection, the Administration may modify a suspension under this section or issue a restrictive license, **including a restriction that prohibits the licensee from driving or attempting to drive a motor vehicle unless the licensee is a participant in the Ignition Interlock System Program established under § 16–404.1 of this title, if:**
>
> . . .
>
> (3) If the licensee refused to take a test, the Administration may not modify a suspension under this section or issue a restrictive license **except as provided under paragraph (4) of this subsection.**
>
> (4) **In addition to the authority to modify a suspension or issue a restrictive license under paragraph (1) or (2) of this subsection, the Administration may modify a suspension under this section or issue a restrictive license to a licensee who participates in the Ignition Interlock System Program established under § 16–404.1 of this title for at least 1 year.**

The MVA now has authority to modify a suspension or issue a restrictive license to a driver who has submitted to the test under subsection (n)(1), (2) or (4) and to a driver who has refused the test only under subsection (n)(4). In other words, a driver whose license is suspended pursuant to § 16–205.1 is eligible for the Ignition Interlock System Program, even if the test is refused. Nevertheless, participation in the Ignition Interlock System Program depends on whether an Administrative Law Judge determines that the offender's participation is appropriate.

As we see it, § 16–205.1(b)(2)(iii)'s amendment did not affect the Form DR–15 advice. An accused must still be advised by an arresting officer of the "administrative sanctions" for refusing to submit to the test, and not of the full panoply of

possibilities left to the discretion of the MVA. The 1998 amendment to § 16–205.1(b)(2)(iii) was the result of an amendment to subsection (n). An arresting officer is not required to explain an offender's eligibility for the Ignition Interlock System Program. If that had been the intent of the legislature, § 16–205.1(b)(2)(iii) would refer to entire subsection (n), rather than to just two of its portions.

We now turn to appellant's assertion that he was not given accurate advice from the Form DR–15 used by the arresting officer. We agree that § 16–205.1(n)(4) renders inaccurate the following language: "If you refuse to submit to the test, you will be ineligible for a modification of a suspension or issuance of a restrictive license,"[4] but we do not agree that it requires suppression of the results of the breath test administered to appellant. Under these circumstances, appellant suffered no prejudice, nor does appellant claim that this inaccurate information in any way interfered with his decision to take the breath test.

After having been given Form DR–15 advice, appellant first refused to take the breath test, then changed his mind and took it. The administrative sanctions that apply to an offender who refuses to take the breath test apply no longer when the offender decides to take the test. Since the Interlock Ignition System Program is now available to an accused whether or not the test is taken, appellant suffered no prejudice.[5]

---

4. This would explain why Form DR–15 was amended by the MVA in February of 1999. The new Form DR–15 provides, "You will be ineligible for modification of the suspension or a restrictive license; except in certain circumstances, a test refusal suspension may be modified and a restrictive license issued, if you agree to participate in the Ignition Interlock Program for at least 1 year." We do not agree that this change indicates that this information was required. It merely corrects an inaccurate statement following the enactment of subsection (n)(4).

5. Even had appellant shown prejudice, we question whether he would have been deprived of the process he was due. *See Hare, supra,* 326 Md. at 303, 604 A.2d 914, *Darrikhuma v. State,* 81 Md.App. 560, 568 A.2d 1150 (1990).

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**