516 A.2d 970

George **BROSAN**

v.

Gil **COCHRAN** et al.

**No. 25, Sept. Term, 1986.**

Court of Appeals of Maryland.

Nov. 10, 1986.

James J. Doyle, III, Asst. Atty. Gen., of Pikesville (Stephen H. Sachs, Atty. Gen., on the brief, Baltimore), for appellant.

Ellen Luff (Gil Cochran, on the brief), Annapolis, for appellees.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

MURPHY, Chief Judge.

This case presents questions relating to the claimed constitutional right (1) of an individual apprehended for drunk driving to a face-to-face consultation with his attorney prior to deciding whether to submit to a police-administered breathalyzer test and (2) of an attorney to administer his own breathalyzer test to a drunk driving client, as part of his legal representation of the client, prior to advising him whether to submit to the State-administered sobriety test.

## I.

Maryland Code (1984 Repl.Vol.) § 16-205.1(a) of the Transportation Article provides that any person detained on suspicion of driving while intoxicated or under the influence of alcohol "is deemed to have consented ... to take a chemical test to determine the alcohol content of his blood." Subsection (b) provides that such an individual may not be compelled to take the test but that refusal to do so will result in a license suspension for a specified period of time. Code (1984 Repl.Vol.) § 10-303 of the Courts and Judicial Proceedings Article requires that the chemical test be administered within two hours of apprehension.

On March 12, 1984, the Superintendent of the Maryland State Police Department issued General Order No. 01-84-73, establishing procedures governing the right of an accused to consult with legal counsel prior to the administration of a breathalyzer test for sobriety. The order provided that although the accused was not to be offered the right to consult with an attorney prior to making the decision whether to submit to or refuse the test, "a brief opportunity to make telephone contact with his attorney" would be permitted upon request. Notwithstanding the presence of the accused's attorney at the police barracks at the time the suspect was being held for chemical testing, the order provided that only telephonic, and not face-to-face, communication would be allowed.

## II.

By a complaint for injunction and declaratory relief filed on January 28, 1985 with the Circuit Court for Anne Arundel County, Gill Cochran, an attorney, and Thomas Strange, a former client, challenged the constitutionality of General Order No. 01-84-73. The complaint averred that Strange had been apprehended for driving while intoxicated on December 26, 1984; that Strange was permitted to contact Cochran by telephone; that Cochran arrived at the police barracks four minutes later and sought to consult personally with Strange; that the police refused to permit such a

face-to-face consultation, limiting contact between Cochran and Strange to telephonic communication in accordance with the General Order; that as a result of his inability to personally confer with his attorney, Strange refused to take the breathalyzer test and his license was suspended. The complaint alleged a denial of Strange's constitutional right to counsel under the due process clause of the Fourteenth Amendment.

The complaint further averred that Cochran has represented a number of drunk driving suspects, including Strange; that as part of his legal representation of these clients, he promptly appears at the police barracks where the suspects are being held in order to confer personally with them and to administer his own breathalyzer test to the clients before advising them whether to take or refuse the State-administered test; and that the Superintendent's General Order so limiting discourse between attorney and client to telephonic contact inhibits his right to freely communicate with his client for the purpose of providing adequate legal advice. Cochran further alleged that because the State-administered breathalyzer tests are inaccurate, he has a professional obligation to administer his own breathalyzer test to his clients; that his administration of such a test does not interfere in any way with the timely and efficacious administration of the State-administered chemical testing process; that the General Order constitutes an impermissible interference with his right to pursue his occupation; and that the General Order amounts to an unconstitutional abridgement of his privileges and immunities, constitutes a deprivation of liberty and property without due process of law, and violates his First Amendment right to free speech. The complaint sought, among other relief, a preliminary and permanent injunction enjoining the Superintendent and his police agents from preventing personal contact and consultation between drunk driving suspects and their attorneys, and from preventing the administration by attorneys of breathalyzers to their clients within two hours of the clients' apprehension. Also sought was a

declaration that General Order No. 01–84–73 was unenforceable as being in violation of the state and federal constitutions.

Following an evidentiary hearing, the Circuit Court for Anne Arundel County (Williams, J.) granted a preliminary injunction on August 19, 1985 enjoining enforcement of General Order No. 01–84–73, and further ordering that "attorneys be permitted to consult face-to-face with clients who contact them requesting consultations prior to deciding whether to submit to chemical tests for intoxication, so long as it does not interfere with the conducting of a breathalyzer test by the appropriate police agency."

The Superintendent did not appeal from the issuance of the preliminary injunction. Instead, he promulgated General Order No. 01–85–90, establishing an interim procedure pending final resolution of the litigation. The interim order, while permitting face-to-face contact between client and counsel, prohibited counsel from administering a private breath test prior to the client's election to take or refuse the State-administered test. The interim order did, however, authorize counsel to administer his own test to the client at the conclusion of the State-administered test.

After conducting an evidentiary hearing on the prayer for a permanent injunction, the court framed the issue before it as whether to enjoin the enforcement of the Superintendent's interim order "barring the use of private breathalyzers on an accused drunk driver prior to police testing." The court (Williams, J.) granted the permanent injunction. Placing reliance upon our decision in *Sites v. State,* 300 Md. 702, 481 A.2d 192 (1984), it held that a drunk driver suspect had a constitutional right to consult with counsel prior to deciding whether to submit to the police sobriety test, provided that the communication did not "unreasonably impede police processing." Extending the principle of *Sites* to the "content of the communication," the court held that the police must permit an attorney to administer a breathalyzer test to his client "as long as the device does not impair or

impede the department's own testing." The court pointed out that no evidence was adduced at the trial that Cochran's breathalyzer could affect the accuracy of the Department's sobriety test; consequently, the court declined to "uphold a prohibition against the use of breathalyzers where there is no evidence that the efficacy of the police sobriety test may be impaired." The court explained:

"The department's only explanation as to why it has banned these devices is that it feels that if the accused knows his blood-alcohol level, he will refuse the department's sobriety test and the conviction rate on drunk driving arrests will go down. This may or may not be true. The civil penalty for refusing to take a sobriety test (up to six months suspended license for a first offense) would, for many, be worse than the likely criminal penalty for drunk driving. Regardless, individuals do have a right to refuse the test. Md.Transp.Code Ann., § 16–205.1(b). It is not the duty of the police, in the interest of high conviction rates, to withhold from the accused information which he may find relevant in deciding whether to exercise his right of refusal. Police may bar the use of breathalyzers, but only for legitimate reasons—where their use may impair accurate police testing."

The Superintendent appealed from the court's decree, and we granted certiorari on our own motion prior to decision by the Court of Special Appeals to consider the important issue raised in the case.

### III.

In *Sites,* we held that a person apprehended for driving while intoxicated, but who was not yet formally charged, did not have a Sixth Amendment right to consult counsel before deciding whether to submit to a chemical sobriety test. We held, however, that a constitutional due process right to communicate with counsel did exist in those circumstances, where requested by the client, provided that such communication "will not substantially interfere with the

timely and efficacious administration of the testing process" (bearing in mind the statutorily imposed two-hour post-apprehension time limit). 300 Md. at 717–18, 481 A.2d 192.

■ Contrary to the Superintendent's first contention, nothing in *Sites* limits the due process right to communicate with counsel to a single telephonic contact. Undoubtedly, the statutory time constraints imposed upon the State-administered blood alcohol testing process may well limit the client's ability to communicate with counsel other than by a single telephone conversation. But to so circumscribe the due process right far too narrowly restricts the scope of the constitutional right recognized in *Sites*.[1]

Nor is the constitutional right to counsel in any event limited solely to lawyer-client telephonic communication, as the Superintendent further contends. In no way did we limit the mode of lawyer-client communication in *Sites* or otherwise differentiate between telephone and face-to-face consultation. Indeed, we quoted with approval from a New York Court of Appeals case which involved, as here, the right of a drunk driver suspect to counsel prior to deciding whether to submit to the sobriety test:

" '[L]aw enforcement officials may not, without justification, prevent access between the criminal accused and his lawyer, *available in person or by immediate telephone communication,* if such access does not interfere unduly

---

1. One state has expressly determined that, once a drunk driving suspect has telephoned an attorney, no further personal or telephonic access to counsel is permitted prior to the suspect's decision regarding the state-administered chemical sobriety test. In *Romo v. Municipality of Anchorage,* 697 P.2d 1065 (Alaska Ct.App.1985), the court decided that the defendant's right to counsel had not been denied by the police refusal to allow him a second call to an attorney before deciding whether to take the breathalyzer test. The court said that "the important consideration is that Romo had been given a reasonable opportunity to contact an attorney and had spoken with one." *Id.* at 1071. As Alaska has not recognized that drunk driver suspects have a constitutional right to counsel, *Romo* relied on a statutorily-mandated right to counsel for DWI suspects in reaching its decision and is therefore not here apposite.

with the matter at hand....'" *Sites, supra,* at 713, 481 A.2d 192 (*quoting People v. Gursey,* 22 N.Y.2d 224, 292 N.Y.S.2d 416, 418, 239 N.E.2d 351, 352 (1968) (emphasis added)).[2]

We thus agree with Judge Williams that "whether the communication is by phone or in person is irrelevant; the operative question is whether the requested communication would unreasonably impede police processing." *See also Capretta v. Motor Vehicles Division,* 29 Or.App. 241, 562 P.2d 1236, 1238 (1977) ("[w]hether counsel is available at the station or at the other end of a telephone line is not a pertinent distinction"). Of course, in neither event may drunk driver suspects postpone the decision whether to submit to the state chemical sobriety test until they have consulted with their attorneys, whether personally or by telephone, if the attorney is not available on a timely basis. What constitutes timeliness is to a large extent determined by the facts of the particular case but, under no circumstances, may the time period exceed the two-hour limit imposed by statute.

Finally, the Superintendent argues that even if in-person communication is permissible, the fundamental fairness component of due process of law does not require that attorneys be permitted to administer private breathalyzer tests to aid their clients in deciding whether to take the State's blood alcohol test. He suggests that because the

---

**2.** Court decisions in several states, relying upon particular statutory language, have indicated that only telephonic communication is required. *See Hoffman v. Iowa Dept. of Transp.,* 257 N.W.2d 22, 23 (Iowa 1977) (Mason, J., concurring) (*quoting with approval Prideaux v. State, Dept. of Public Safety,* 310 Minn. 405, 421, 247 N.W.2d 385, 394 (1976); *Price v. N.C. Dept. of Motor Vehicles,* 36 N.C.App. 698, 703, 245 S.E.2d 518, 521 (1978). Other states which have enacted statutes providing drunk driving suspects with a right to communicate with an attorney have held that timely face-to-face consultation between attorney and client must be allowed. *See State, Dept. of Public Safety v. Kneisl,* 312 Minn. 281, 251 N.W.2d 645 (1977); *Siegwald v. Curry,* 40 Ohio App. 313, 319 N.E.2d 381 (1974). *See also State v. Bristor,* 9 Kan.App.2d 404, 682 P.2d 122, *rev'd on other grounds,* 236 Kan. 313, 691 P.2d 1 (1984).

administration of a breathalyzer is a scientific test, rather than a verbal exchange, it is not a "communication" between attorney and client permitted by *Sites*. Underlying the Superintendent's position is his belief that fewer drunk driving convictions will be obtained if an attorney is permitted to give a private breathalyzer to his client prior to the administration of the State test. He suggests that the State has a legitimate interest "in convicting individuals who drive drunk on Maryland highways" and that a high correlation exists between convictions and those who actually submit to the State test. Conversely, the Superintendent says that allowing private breathalyzer tests would have a negative impact on the number of arrested individuals who decide to take the State's test and thereby will decrease the number of convictions that the State may obtain. The Superintendent does not argue that the timely administration by attorneys of breathalyzers to their clients constitutes a security or administrative problem of any kind, or in any way affects the integrity or the accuracy of the State test, or otherwise interferes with or delays the administration of the State testing process.

 It is well settled that the requirements imposed by the due process clause "are flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). As we otherwise stated in *Sites, supra*, 300 Md. at 716, 481 A.2d 192, "the exact contours of the due process right are not definable with precision," and necessarily depend on the circumstances in each case. In determining how much process is due in any given situation, it is necessary to examine the importance of the life, liberty, or property interest at stake and the extent to which the questioned procedure might reduce the possibility of uninformed decision-making. Against the individual's interest, a court must weigh the State's legitimate competing interest, which necessarily includes the avoidance of any increased administrative or fiscal burdens resulting from

the requested procedure. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ The continued possession of a driver's license may become essential to earning a livelihood; it is, therefore, an entitlement that may not be taken away without the due process mandated by the Fourteenth Amendment. *Sites, supra* [300 Md.], at 717, 481 A.2d 192, *citing Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *Sites* further makes clear that revocation of a driver's license may burden the ordinary driver as much or more than the traditional criminal sanctions of fine or imprisonment. *Id.* By affording a drunk driver suspect the power to refuse chemical testing, the Maryland statute "deliberately gives the driver a choice between two different potential sanctions, each affecting vitally important interests." *Id.* Thus, drunk driving suspects have a significant interest at stake in deciding whether to submit to the State-administered chemical sobriety test. If they refuse, their licenses are suspended, and they may also be convicted based on other evidence of drunk driving.[3] For drunk driving suspects who would "pass" the State's test, therefore, the pre-election administration of a private breathalyzer would likely encourage them to submit to the test and thereby avoid the automatic license suspension and possibly criminal prosecution as well. Therefore, the decision whether to submit to the State test is of the most fundamental importance in determining the ultimate resolution of the suspect's case. *See South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

The record discloses that a breathalyzer is a small handheld device into which the suspect expels his breath. The test is simple to administer. The process requires but a minute or so, and a reading of the suspect's blood alcohol

---

3. A drunk driver suspect's refusal to take the test is now admissible in evidence at the criminal trial for violation of the motor vehicle laws. *See* ch. 652 of the Acts of 1986.

content is then made. As earlier indicated, the Superintendent's order prohibiting attorney-administered breathalyzer tests is based *solely* upon the premise that such preliminary private testing will result in fewer convictions for drunk driving. No similar prohibition is imposed by the Superintendent where face-to-face consultation between an attorney and client is permitted with respect to the administration of other sobriety-type tests by an attorney, *i.e.*, the "finger to nose," "walk a straight line," "flashlight in the eye," or "reciting the alphabet" tests.

 It is axiomatic that the right to counsel carries with it the right to the *effective assistance* of counsel. While we recognize the significant danger that drunk drivers pose to the safety of others, the State's generalized interest in convicting such individuals cannot override their constitutional right to communicate with counsel before deciding whether to submit to the State's sobriety test. Simply because the attorney-administered test involves an instrument and requires a subsequent reading of the test results does not mean that the information thereby conveyed between attorney and client is not a communication within the contemplation of *Sites*. On the contrary, we think the exchange of such information, although not exclusively verbal, is nevertheless a communication between attorney and client.[4] As such, it is in the circumstances, where requested, part of the process constitutionally due a drunk driving suspect under the rationale of *Sites*. In so concluding, we take pains to note the narrowness of our holding. It is limited to drunk driving cases where the singular

---

**4.** For purposes of the attorney-client privilege, it has been held that a communication need not be exclusively verbal but may include information conveyed by other means. *See, e.g., Cooper v. Mann,* 273 Ala. 620, 622, 143 So.2d 637, 639 (1962); *In re Navarro,* 93 Cal.App.3d 325, 330, 155 Cal.Rptr. 522 (1979); *State v. Hardin,* 558 S.W.2d 804, 807 (Mo.Ct.App.1977); *see also State v. Dress,* 10 Ohio App.3d 258, 461 N.E.2d 1312 (1982) (blood alcohol test administered by emergency room physician in examining a motorist involved in an accident constituted a "communication" within meaning of statute governing physician-patient privilege).

decision whether to submit to the State test is of such critical importance. In addition, the private test may only be administered where "such attempted communication will not substantially interfere with the timely and efficacious administration of the [State] testing process." *Sites, supra,* 300 Md. at 717, 481 A.2d 192.

JUDGMENT AFFIRMED, WITH COSTS.