488

859 A.2d 664

**STATE of Maryland**

v.

**Timothy WEISBROD.**

**No. 1925, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Oct. 12, 2004.

**490**

Celia Anderson Davis (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellant.

Leonard R. Stamm (Andrea Hayduk, Goldstein & Stamm, P.A., on the brief), Baltimore, for Appellee.

Panel: DEBORAH S. EYLER, KRAUSER, CHARLES E. MOYLAN, Jr. (retired, specially assigned), JJ.

CHARLES E. MOYLAN, Jr., Judge (Retired, Specially Assigned).

In dismissing two alcohol-related charges against a defendant, the trial judge vastly expanded the rights, statutory and constitutional, enjoyed by one charged with such offenses. On this appeal, we agree with the State that, at three separate levels of analysis, the dismissal was erroneous.

## The Motion to Dismiss

The appellee, Timothy Weisbrod, was charged with five offenses: 1) driving under the influence of alcohol; 2) driving while impaired by alcohol; 3) driving on a suspended license; 4) failure to display a driver's license on demand; and 5) exceeding the speed limit. In the Circuit Court for Prince George's County, the appellee waived his right to trial by jury. Following a court trial on three of those five charges, he was found not guilty of driving on a suspended license, but guilty of both 1) failure to display a driver's license on demand and 2) exceeding the speed limit. This appeal does not concern any of those three verdicts.

Immediately prior to trial, however, the appellee moved to dismiss the two charges of 1) driving under the influence of alcohol and 2) driving while impaired by alcohol. The circuit

court granted the motion. The State appeals that dismissal. Maryland Code, Courts and Judicial Proceedings Article, § 12–302(c)(1).

The appellee was arrested by the Maryland State Police at 2:48 A.M. on May 17, 2002, for driving at 65 miles per hour in a 50 mile per hour zone. He failed to present a driver's license when requested by the trooper to do so. He was also suspected of driving under the influence of alcohol. After being taken into custody, he was read the standardized DR–15 Advice of Rights. He refused to consent to a breath test for alcohol. According to the police, the appellee did not exhibit any difficulty in understanding the advice nor did he request an attorney.

In arguing for a dismissal of the two alcohol-related charges, the appellee claimed that the troopers had failed to advise him of his alleged right, pursuant to Maryland Code, Courts and Judicial Proceedings Article, § 10–304(e), to have his own physician conduct a test on him for blood alcohol content.

### The Trial Court's Ruling

The trial judge 1) accepted the defense argument that there was such a right, 2) concluded that due process of law demanded that the police affirmatively advise a suspect of such a right but that they failed to do so, and 3) determined that the appropriate sanction for such a due process violation was the dismissal of the charges.

Our appraisal of the dismissal will be made at three different levels of inquiry. Our ground level inquiry will be whether the appellee even possessed the statutory right to an independent test, with respect to which the police failed to inform him. Our second level of inquiry will assume, purely *arguendo,* the existence of such a right and then inquire whether, positing such a right, there is an affirmative obligation on the police, either statutory or constitutional, to inform a defendant about such a right. Our third level of inquiry will assume, again purely *arguendo,* both 1) the exis-

tence of the right and 2) the affirmative obligation to inform, and then inquire whether, positing a failure to inform, the appropriate sanction should be the dismissal of the charges.

## A. The Existence of the Right

The trial court, in rendering its opinion, essentially assumed the existence of such a right.

Defense Exhibit 3 is the advice of rights form pursuant to Transportation Article 16–205.1. It bears the signature of the defendant along with the officer, Trooper Tupper, Maryland State Police. There are several rights that are set forth in that exhibit which were presented to the defendant at the time in question.

Arguments have been presented relative to the defendant's right to have an independent chemical test, as set forth under Courts and Judicial Proceedings Article 10–304(e). *The argument that has been presented by defense counsel is, one, that the defendant had a right to secure an independent blood test;* two, based upon the exigency of circumstances surrounding an arrest for a stop for driving under the influence of alcohol, that there is a time element in terms of the dissipation of that alcohol from the system, which obviously is recognized by the state and which gives rise to the reason why they wish to administer the test under those circumstances within a specific time period.

The time period would also hold true based upon common sense should a defendant wish to have an independent test. *And in fact the Courts and Judicial Proceedings section allows an individual to have an independent test.*

The Court has heard argument from the State relative to this point. *The State's assertion is that the defendant did not make a request for that independent test and,* as such, *there is, in essence, a waiver of that particular right.*
(Emphasis supplied).

## B. The Obligation to Advise

The core of the trial court's opinion was that, assuming such a right to exist, an appropriately expansive application of the

due process clause would then require the police affirmatively to advise a suspect of the existence of such a right.

*The Court believes that you cannot exercise a right unless you are made aware of that right* in some form, either directly or circumstantially. Clearly, Defense Exhibit 3, the Advice of Rights form, could provide a provision that is consistent with the aforementioned Courts and Judicial Proceedings Article. This particular one does not.

There has been argument presented by defense counsel that language consistent with that provision appeared on the form at some point, but certainly it is not reflected on the form that is before the Court, which is the form that was presented to the defendant. Having said that, *this Court does not believe that you can exercise a right intelligently unless you are made aware of that right.*

*The Court believes,* consistent with *Brosan [v. Cochran], that* the due process right or *the contours of a due process right are in fact flexible.* The Court believes that the defendant-there has been nothing presented to suggest that the defendant was aware in some form that he had a right to that independent test.

*There is nothing that has been presented relative to the argument that he was advised either directly or indirectly of that right.* And if he was not, then he can't possibly exercise the appropriate intelligent right whether to submit to the chemical test that is—that was presented to him through the officer or not to submit to the test consistent with his constitutional right.

(Emphasis supplied).

## C. The Sanction of Dismissal of Charges

After finding that there was no evidence to show that the appellee had been advised by the police with respect to the alleged right now being debated, the trial court uncritically applied the sanction of dismissing the charges.

*The Court believes that in the absence of such evidence, that it is appropriate that the defendant's motion to dismiss be granted.*

(Emphasis supplied).

## Level I Analysis:

## The Existence of the Right in Question

The right or rights on which the appellee builds his argument are to be found, he claims, in Maryland Code, Courts and Judicial Proceedings Article (1992 Repl. Vol.), § 10–304(e), which provides:

(e) *Physician of accused's choosing; accused may request test.—The person tested is permitted to have a physician of the person's own choosing administer tests* in addition to the one administered at the direction of the police officer, and *in the event no test is offered* or requested by the police officer, *the person may request,* and the officer shall have administered, *one or more of the tests provided for in this section.*

(Emphasis supplied).

## A. Interpretive Guidelines for Reading the Section

That section is a part of a comprehensive scheme, §§ 10–301.1 through 10–309, enacted originally in 1959, to provide chemical tests of both blood and breath to determine blood alcohol content. Before turning to the meaning of § 10–304 specifically, it behooves us to get into the appropriate interpretative mindset. In *State v. Moon,* 291 Md. 463, 477, 436 A.2d 420 (1981), Judge Smith announced with respect to all of these sections:

*Moon sees the sections here before the Court as having been enacted for the protection of an accused. We see them as concerned with the protection of the public.*

(Emphasis supplied).

With specific reference to §§ 10–303 through 10–309, Judge Cole, in *Willis v. State,* 302 Md. 363, 369–70, 488 A.2d 171 (1985), was even more emphatic about the prosecutorial pur-

pose of this law, facilitating the chemical testing for blood alcohol content.

The tragic circumstances of this case are a grim but graphic reminder of the terrible toll exacted by automobile accidents. The carnage caused by drunk drivers on American highways is a national problem that does not require detailed documentation. *See South Dakota v. Neville,* 459 U.S. 553, 558, 103 S.Ct. 916, 920, 74 L.Ed.2d 748, 755 (1983). This case glaringly demonstrates that Maryland enjoys no immunity from this lamentable problem, "[t]he magnitude of [which] ... cannot be exaggerated." *Little v. State,* 300 Md. 485, 504, 479 A.2d 903, 912 (1984). *The General Assembly,* however, *has attempted to meet the considerable challenge* created by this problem *by enacting a series of measures to rid our highways of the drunk driver menace. These measures,* some of which are decades old, *are primarily designed to enhance the ability of prosecutors to deal effectively with the drunk driver problem.*

(Emphasis supplied).

Again with specific reference to §§ 10–302 through 10–309, Judge Couch, in *State v. Werkheiser,* 299 Md. 529, 533, 474 A.2d 898 (1984), was equally clear about which party in a criminal case is the intended beneficiary of these sections.

*The Maryland General Assembly has enacted laws to enhance the ability of prosecutors to deal effectively with the problem of drunk drivers* on our state highways.

(Emphasis supplied).

In emphasizing the pro-prosecutorial focus of the chemical testing laws, this Court, in *Brice v. State,* 71 Md.App. 563, 566, 526 A.2d 647 (1987), was not to be outdone by the earlier statements.

*This appeal* by Victor Chandler Brice, a convicted drunken driver, *betrays a naive failure on his part to appreciate that the very laws he invokes were designed deliberately to facilitate his conviction, not to shield him from what is virtually an unrelenting search for truth in drunken driving cases.* In coping with the social problem of the drunken

driver, the judicial mood and the legislative mood are in total accord.

(Emphasis supplied).

## B. The Qualifying Circumstances Under § 10–304(e)

■ Section 10–304, generally, deals with 1) the qualifications of persons administering the chemical tests and 2) the approval and certification of the equipment used in testing. Subsection (e) deals with two very specific sets of circumstances under which a suspect may be entitled 1) to have an additional test done without interference by the police and 2) to insure that the police themselves have a test administered.

The first set of qualifying circumstances for additional testing provides that, **IF A PERSON HAS BEEN TESTED** by the State's personnel, that **PERSON TESTED** is then **PERMITTED** to have additional testing done by a physician of his own choosing. That part of the subsection provides:

> *The person tested* is permitted to have a physician of the person's own choosing administer *tests in addition to the one administered at the direction of the police officer,*
>
> . . . .

(Emphasis supplied).

Section 10–304(e) does not create the right of a person, on his own initiative and at his own expense, to have a doctor of his own choosing test his breath or blood or urine or anything else in order to determine blood alcohol content. That option is simply part of the inherent freedom of everyone to do whatever one wishes with one's money, including preparing a criminal defense in any way that one decides to do so. One may hire a dozen doctors to do a dozen tests for blood alcohol content. One may hire any number of other experts to do any number of other tests. One may, if one wishes, hire fortune tellers or soothsayers. One may hire cheerleaders. This is not to say that these various results would all be deemed relevant, competent, and admissible. It is simply to say that one may prepare a defense in any way that one wishes if one can afford to do so.

The only thing that § 10–304(e) does is to specify one particular situation in which the police may not, despite the fact that the suspect is in their custody or otherwise under their control, interfere with a suspect's option, at his own expense and through his own arranging, to have a physician of his own choosing conduct an independent test. That one particular situation is one in which the police, with the suspect's consent, have already had administered their own test for blood alcohol content. In that well-defined circumstance, the police must permit the suspect to have his own independent test in order to balance the investigative scales. Section 10–304(e) does not create the right to an independent test. It simply spells out certain circumstances in which the police may not interfere with that right.

The appellee in this case was offered a breath test and refused to take it. He never, therefore, qualified as the **PERSON TESTED.** The word "tested" is a past participle. There never having been a test administered by the State, language about some further test "in addition to the one administered at the direction of the police officer" never came into play. Under the circumstances of this case, the appellee never qualified for any right or entitlement pursuant to the first part of subsection (e). The condition precedent never came to pass.

In *State v. Bloomer,* 618 N.W.2d 550 (Iowa 2000), the Supreme Court of Iowa was called upon to interpret a statute very similar to the Maryland statute in issue. The pertinent part of the Iowa statute provided:

The person may have an independent chemical test or tests administered at the person's own expense *in addition to any administered at the discretion of a peace officer.*

618 N.W.2d at 552 (emphasis in original).

The Iowa Supreme Court held, as we are holding today, that that provision with respect to an independent test only comes into play in those situations in which the driver actually submits to a state-administered test.

Our court of appeals explained the scope of this statutory entitlement in *State v. Mahoney*, 515 N.W.2d 47 (Iowa App.1994). In *Mahoney*, the court found that *a person arrested for DWI must submit to the officer's requested test before being entitled to take an independent breath, blood or urine test.* The court's holding rested on evident legislative intent: *use of the words "in addition to" in section 321J.11 makes clear that a defendant "must submit to a state-administered chemical test before being allowed to demand an independent test."*

[S]ection 321J.11's entitlement to *an independent test is only applicable when a defendant has submitted to a requested test.*

618 N.W.2d at 552–53 (emphasis supplied). Just as in Iowa, the Maryland statute contains the critical words "in addition to."

The appellee is even more bereft with respect to the second set of circumstances provided for in subsection (e). Those circumstances are that, **IN THE EVENT THAT NO TEST IS OFFERED OR REQUESTED BY THE POLICE OFFICER,** the suspect may, on his own initiative, request a test of either breath or blood, and the police shall then see that such a test is administered. The second part of subsection (e) provides:

*[I]n the event no test is offered or requested by the police officer,* the person may request, and the officer shall have administered, one or more of the tests provided for in this section.

(Emphasis supplied).

A breath test was offered and requested by the State trooper. The condition precedent for subsection (e)'s second set of circumstances, therefore, never came to pass.

At the most fundamental level, the appellee, under the circumstances of this case, never qualified for any right relating to **ADDITIONAL TESTING** pursuant to § 10–304(e). There was self-evidently no failure to advise him of a non-existent right. That non-qualification is dispositive of this

appeal. We think, however, that certain approaches employed in the ruling below could readily recur and that some forfending countermeasures are, therefore, appropriate.

## Level II Analysis:

### The Affirmative Duty to Advise

Although our holding is unequivocal that the appellee possessed no right under § 10–304(e) in this case, we will, for purposes of the ensuing discussion, make the *arguendo* assumption that he did possess a right to additional testing by a physician of his own choosing. That will bring us to the necessary connection, if any, between 1) the existence of a right and 2) the obligation of the police to advise the suspect about the existence of such a right. The obligation to advise, if it exists, might be statutory or it might be constitutional. We shall look at both possibilities.

### A. A Statutory Obligation to Advise

■ With respect to a test of one's breath or blood for blood alcohol content, the only advice that a detaining officer is statutorily required to give to a person licensed to drive in the State of Maryland, other than a driver who is operating a commercial motor vehicle, is expressly spelled out by Transportation Article, § 16–205.1(b)(1)(i):

(b) *No compulsion to take chemical test; consequences of refusal.*—(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, *the detaining officer shall advise the person that,* on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

(i) *In the case of a person licensed under this title:*

1. For a test result indicating an alcohol concentration of 0.08 or more at the time of testing:

A. For a first offense, suspend the driver's license for 45 days; or

B.  For a second or subsequent offense, suspend the driver's license for 90 days; or

2. *For a test refusal:*

A. *For a first offense, suspend the driver's license for 120 days; or*

B. *For a second or subsequent offense, suspend the driver's license for 1 year.*

(Emphasis supplied).

The advice required by § 16–205.1(b)(1) was contained in the standardized DR–15 Advice of Rights form that was read to the appellee by the State trooper who took him into custody and was then handed to the appellee so that he could read it again for himself. It was after receiving that advice that the appellee refused to consent to a breath test for alcohol. The appellee does not argue that he was not advised of everything that § 16–205.1(b)(1) requires.

Two companion cases dealing directly with "what advice a police officer is required to give a driver detained on suspicion of driving while intoxicated or while under the influence of alcohol" are *Hare v. Motor Vehicle Administration,* 326 Md. 296, 604 A.2d 914 (1992) and *Motor Vehicle Administration v. Chamberlain,* 326 Md. 306, 604 A.2d 919 (1992). In each case, the opinion for the Court of Appeals was written by Judge (now Chief Judge) Bell.

In both cases, the sanction for having failed to consent to a chemical test for blood alcohol content was the suspension of a driver's license. Both Hare and Chamberlain claimed that they had not been adequately advised as to the possible consequences of refusing to consent to the test requested by the police. Each of them had been read the DR–15 Advice of Rights Form, containing what was then required by Transportation Article, § 16–205.1(b).

Hare argued that he "was unaware of [a particular unadvised] consequence of refusing the test and that, had he known, he probably would have taken the test." 326 Md. at 299, 604 A.2d 914. His claim of error was that "he had not

been fully advised of the 'administrative sanctions that shall be imposed' when he refused to take the chemical test." *Id.* With respect to the statutory obligation on the police to advise a driver, Judge Bell stated squarely:

> The only advice that the officer must give the driver is that which is specifically set out in § 16–205.1(b)(1).

326 Md. at 300, 604 A.2d 914.

Chamberlain made a similar claim that he had been handicapped in deciding whether to refuse or to consent to a chemical test because the police had not adequately informed him of all of the possible consequences of his decision. At the trial level, Chamberlain actually prevailed with that argument. A Montgomery County judge, deciding in his favor, had ruled:

> The record further establishes that Appellant was not fully advised of all pertinent administrative procedure since he was not informed by the arresting officer that he might possibly obtain a restricted license for work and alcohol education purposes if he agreed to take the breathalyzer and received results indicating an alcohol concentration of .10 or more ... which failure amounted to a denial of due process.

Quoted at 326 Md. at 312, 604 A.2d 919.

The Court of Appeals agreed with Chamberlain's statement of the issue before the court:

> Chamberlain correctly perceives *the issue to be how much advice the Legislature intended the police to give a detained driver* concerning the consequences of refusing or failing a chemical test for alcohol.

*Id.* (emphasis supplied).

The Court of Appeals then reversed the circuit court, however, and held that there is no obligation on the police to tell a driver anything other than that which the Legislature expressly set out in § 16–205.1(b)(1).

> *The Legislature,* concerned that a driver faced with the decision whether to take a test for alcohol concentration or to refuse to take it be aware of certain of the consequences

of that decision, *explicitly set out in § 16–205.1(b)(1) what a driver must be told upon detention.*

326 Md. at 317, 604 A.2d 919 (emphasis supplied).

The appellee would read *Hare* and *Chamberlain* very narrowly, as holding only that the collateral consequences of a refusal to consent do not have to be the subject of required police advice. Our reading of those cases, however, makes it clear that nothing is required by way of obligatory advice other than that which the Legislature expressly mandated in § 16–205.1(b). Those cases do not stingily say that "B" specifically and "C" specifically are not part of the required advice. They declare broadly that nothing other than "A" need ever be part of the required advice.

In *Darrikhuma v. State,* 81 Md.App. 560, 571, 568 A.2d 1150 (1990), the appellant also claimed that he had consented to a breathalyzer test without having been adequately informed of his rights.

Darrikhuma is not claiming that his request to consult with an attorney was denied, or that he was denied the right to utilize a preliminary test. Instead, *he asserts that his due process rights have been unconstitutionally denied him because the advice read to him (the so-called DR–15 rights) was misleading in that it did not adequately inform him that he had a right to a preliminary test performed by a person of his choice before deciding whether to take a police administered test.*

(Emphasis supplied).

The appellant there attempted to extrapolate from *Sites v. State,* 300 Md. 702, 481 A.2d 192 (1984) and *Brosan v. Cochran,* 307 Md. 662, 516 A.2d 970 (1986) an obligation on the police to advise him that, pursuant to *Sites* and *Brosan,* he had a right to a breathalyzer test administered by his own attorney prior to deciding whether to consent to a test administered by the police. Speaking for this Court, Judge Cathell squarely rejected the creation of such an additional advisory obligation.

Mr. Darrikhuma asks us to extend the holdings of *Sites* and *Brosan* beyond the boundaries established in those cases. He apparently asserts that either the officers should have formally advised him of the holdings in *Sites* and *Brosan* or should not have advised him that he would have a right to his own breathalyzer test after the police completed their tests.

We decline to so extend the limits of the *Sites* and *Brosan* holdings. In so deciding we are especially cognizant of the fact that *the Court of Appeals* in *McAvoy*, in discussing *Sites*, described that prior holding in terms of the denial of specific requests for counsel and *declined the opportunity, unequivocally offered it, to expand those prior holdings to require the police to affirmatively advise a defendant of his right to counsel* and to require the police to obtain a waiver of counsel from a defendant prior to the breathalyzer testing.

We also resist the temptation sophistically offered by appellant to hold that, by correctly furnishing a defendant information as to his rights at a future point in time, the police are interfering, in a due process sense, with his rights at a present time. This temptation is especially resistible when *the holdings of Brosan, Sites, and McAvoy have never mandated that the police give any specific advice on the points at issue in the case at bar.*

81 Md.App. at 573–74, 568 A.2d 1150 (emphasis supplied).[1]

As an alternative holding, we conclude that, even if, *arguendo*, the appellee possessed a right to have an additional

---

1. Although not pertinent to the issue before us, the General Assembly, by Chapter 407 of the Acts of 1993, did make several additions to the advice that must be given a motorist pursuant to Transportation Article, § 16-205.1(b). After thoroughly reviewing the legislative history of what is now § 16–205.1 generally, Judge Wilner, in *Meanor v. State*, 364 Md. 511, 531, 774 A.2d 394 (2001), explained the addition made by the Acts of 1993.

Following our decisions in *Chamberlain* and *Hare*, the Legislature made two additions to § 16–205.1 relevant to the issue raised by Meanor. In 1993, it reacted to those cases by adding to § 16–205.1(b)(2)(iii)—the subsection dealing with the advice to be given by

chemical test by a physician of his own choosing, there was no statutory obligation on the police to advise the appellee of such a right.

## B.   A Constitutional Obligation to Advise

The appellee makes the additional argument that the advice he claims a right to is required not only by Maryland statutory law but also by constitutional due process requirements. In *Hare v. Motor Vehicle Administration, supra,* the due process question was squarely posed:

> We have already held that § 16–205.1 requires only that the driver be informed of the certainty, and length, of suspension for refusal, as well as for failure, of the test. *The critical inquiry, therefore, is whether due process requires the officer also to advise a refusing driver of either or both of the other consequences we have identified.*

326 Md. at 302, 604 A.2d 914 (emphasis supplied).

The Court of Appeals not only rejected the argument that advice as to some of the consequences of not consenting to a chemical test was required by Maryland statutory law, but rejected as well the further argument that it was required by the due process clause.

> *Hare's principal argument is that it is fundamentally unfair, hence, a denial of due process, to suspend a driver's license without first advising the driver "fully" of the*

---

the officer—a requirement that the advice include "ineligibility for modification of a suspension or issuance of a restrictive license." *See* 1993 Md. Laws, ch. 407.   In *Forman v. Motor Vehicle Admin.,* 332 Md. 201, 218 n. 8, 630 A.2d 753, 762 n. 8 (1993), we construed that amendment as requiring officers "to specifically advise suspected drunk drivers that the suspension for refusal to take an alcohol concentration test is mandatory," and we presumed that the DR–15 form used by law enforcement agencies "will be amended accordingly."   It was.

Section 16–205.1(b)(2)(iii) requires that police officers must

(iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test, including ineligibility for modification of a suspension or issuance of a restrictive license under subsection (n)(1) or (2) of this section, and for test results indicating an alcohol concentration of 0.08 or more at the time of testing.

*applicable administrative sanctions.* The MVA character-izes this argument as seeking to require advice as to "all of the different possible outcomes of a hearing, depending on whether the licensee takes the test and fails or refuses the test." However characterized, *the argument is not persua-sive.* Accordingly, we hold that *Hare was not denied due process.*

326 Md. at 301, 604 A.2d 914 (emphasis supplied).

Judge Bell emphatically brushed aside the notion that due process, state or federal, creates any affirmative obligation on the part of the police to apprise a suspect of everything that may be helpful to him in making an informed decision.

Although an interesting argument, *we do not believe that due process,* either under the Fourteenth Amendment or under Art. 24 of the Declaration of Rights of the Maryland Constitution *requires that result. A driver need not be told of every conceivable incentive for taking a chemical test for alcohol* or, for that matter, even one additional incentive not required by the statute. *This conclusion is,* we think, *buttressed both by Maryland law and common sense.* As to the latter, when it is once determined that a driver must be apprised of additional incentives, there is no rational basis for determining which of those additional incentives must be covered and which are not of sufficient value to merit inclusion in the advice given the arrestee.

Our cases teach that *due process does not always require the State affirmatively to inform a defendant of the avail-ability of options that might influence decision-making.* It requires no more than that the State not mislead the defendant or construct road blocks, thus unduly burdening that decision-making.

326 Md. at 304, 604 A.2d 914 (emphasis supplied).

Of particular pertinence to the case at hand, Judge Bell cited with approval *State v. Mercer,* 211 N.J.Super. 388, 511 A.2d 1233 (1986) (*due process does not require the police officer to inform defendant of the right to an independent blood alcohol test*).

In *McAvoy v. State*, 314 Md. 509, 551 A.2d 875 (1989), the appellant also argued that his due process right not to have the police interfere with his requested communication with counsel created, *ipso facto*, a concomitant due process right to be affirmatively advised of that entitlement to counsel. Judge McAuliffe held flatly that there is no due process right to be so advised.

> The simple fact is that McAvoy enjoyed no such right. *Sites* dealt only with due process concepts of essential fairness. We there found it fundamentally unfair to deny a request for counsel where the defendant was faced with an important decision....
>
> McAvoy did enjoy the due process rights we recognized in *Sites* and refined in *Brosan. Those rights did not, however, entitle him to advice of his right to counsel.*

314 Md. at 520, 551 A.2d 875 (emphasis supplied). See also *Darrikhuma v. State*, 81 Md.App. at 573, 568 A.2d 1150.

Because Article 24 of the Maryland Declaration of Rights and the Due Process Clause of the Fourteenth Amendment have historically been deemed to be *in pari materia*, it is primarily to the caselaw interpreting the Fourteenth Amendment that we look for guidance.

The appellee here argues that the entitlement to an additional chemical test by a physician of his own choosing after voluntarily consenting to a test by State officials represented an incentive to consent to the State-requested test. He argues that had he known of that incentive, he might well have consented to be tested. He further argues that he was denied due process of law when the police failed to advise him of that incentive and, therefore, unconstitutionally compromised his ability to make a fully informed decision.

To be sure, at the opposite end of the incentive-disincentive scale, the defendant in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), made an indistinguishable due process argument to the Supreme Court.

[R]espondent also suggests that admission at trial of his refusal violates the Due Process Clause *because respondent was not fully warned of the consequences of refusal.*

459 U.S. at 564, 103 S.Ct. 916 (emphasis supplied).

The defendant there claimed that he had no knowledge of the fact that his refusal to take the test could be used against him in court. He claimed that, had he known of that adverse consequence, he would have consented to rather than refused the test. The Supreme Court acknowledged that defendants are frequently faced with difficult choices.

> We recognize that *the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make.* But the criminal process often requires suspects and defendants to make difficult choices.

459 U.S. at 564, 103 S.Ct. 916 (emphasis supplied). It was nonetheless held to be not a violation of due process to use the defendant's refusal to consent against him, even though he had never been advised of that possibility.

> [W]e do not think it fundamentally unfair for South Dakota to use the refusal to take the test as evidence of guilt, *even though respondent was not specifically warned that his refusal could be used against him at trial.*

459 U.S. at 565, 103 S.Ct. 916 (emphasis supplied). We do not see in the Due Process Clause a distinction between advice about every incentive and advice about every disincentive. Neither is required.

*South Dakota v. Neville* made another point that is very pertinent to the due process argument being made by the appellee in this case. The option of making a personal choice as to whether to consent to or to refuse a chemical test for blood alcohol content is not a right of constitutional dimension. It is, in Maryland as in South Dakota, an option conferred purely as a matter of legislative grace. As the Supreme Court observed,

> Respondent's *right to refuse* the blood-alcohol test *is simply a matter of grace* bestowed by the South Dakota Legislature.

459 U.S. at 565, 103 S.Ct. 916 (emphasis supplied). It is, indeed, difficult to conceive how there could ever be a constitutional duty to advise a detainee about some option that is not itself of constitutional dimensions.

Even in a situation, not remotely something present in this case, when what a suspect is being asked by the police to waive is a right of constitutional dimension, it is exceedingly rarely that the Supreme Court has ever imposed a constitutional obligation on the police affirmatively to advise a suspect about the existence of such a right. The only example that comes to mind is *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Even there, the Supreme Court was very hesitant about imposing on the police a constitutionally mandated advisory catechism. The Court made it very clear that the *Miranda* warnings were a prophylactic device that implemented an undergirding constitutional right, the Fifth Amendment privilege against compelled self-incrimination. There is, by contrast, no constitutional right involved in this case.

Efforts by defendants, in the wake of *Miranda*, to expand the use of constitutionally required advisory catechisms have met with universal failure. In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), there was a constitutional right at stake: the Fourth Amendment right to be free of unconstitutional searches and seizures. The question was whether a suspect had voluntarily consented to a search of his automobile that would not otherwise have been authorized—in effect, whether he had waived his Fourth Amendment right. In overturning the United States Court of Appeals for the Ninth Circuit, the Supreme Court held that the voluntariness of consent, even in that constitutional context, does not require knowledge of the right to refuse consent. The Supreme Court rejected the idea that a *Miranda* type warning, advising a suspect that he has the right to refuse to consent, would ever be required.

> *One alternative* that would go far toward proving that the subject of a search did know he had a right to refuse consent *would be to advise him of that right before eliciting*

*his consent. That,* however, *is a suggestion that has been almost universally repudiated by both federal and state courts, and, we think, rightly so.* For it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning.

412 U.S. at 231, 93 S.Ct. 2041 (emphasis supplied).

Indeed, early in the life of this Court, Chief Judge Robert C. Murphy, in *Morgan v. State,* 2 Md.App. 440, 234 A.2d 762 (1967), rejected the idea of the mandatory advising, a la *Miranda,* of the right to refuse to consent before a consent to search could be deemed voluntary.

*[T]here is nothing in Miranda that requires the police to advise an accosted suspect that he need not submit to a search or that, if he does, that the fruits thereof may be used as evidence against him.* See *State v. McCarty,* 199 Kan. 116, 427 P.2d 616 ([1967]), and *State v. Forney,* 181 Neb. 757, 150 N.W.2d 915 [(1967)]

2 Md.App. at 442, 234 A.2d 762 (emphasis supplied).

In *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), the appellant there made the same type of argument being made by the appellee here, except that the argument there had constitutional dimensions which the argument here has not. In that case, after a traffic stop had been fully completed, the driver was asked to consent to a search of his vehicle and did so. The Ohio Supreme Court agreed with Robinette that further conversation by him with the police would not be deemed consensual unless he had been affirmatively advised that he was "legally free to go."

"The right, guaranteed by the federal and Ohio Constitutions, to be secure in one's person and property requires that citizens stopped for traffic offenses be clearly informed by the detaining officer when they are free to go after a valid detention, before an officer attempts to engage in a consensual interrogation. Any attempt at consensual inter-

rogation must be preceded by the phrase 'At this time you legally are free to go' or by words of similar import." 73 Ohio 3d 650, 650–51, 653 N.E.2d 695, 696 (1995).

On an appeal by the state, the Supreme Court of the United States reversed the Supreme Court of Ohio. It posed the question before it as one of whether advice is required in order fully to inform a defendant's decision to forego a right.

> We are here presented with *the question whether* the Fourth Amendment requires that *a lawfully seized defendant must be advised that he is "free to go" before his consent to search will be recognized as voluntary. We hold that it does not.*

519 U.S. at 35, 117 S.Ct. 417 (emphasis supplied).

The Supreme Court declined to impose on the police any obligation to advise suspects as to their rights.

> In *Schneckloth v. Bustamonte,* it was argued that such a consent could not be valid unless the defendant knew that he had a right to refuse the request. We rejected this argument: "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." And *just as it "would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning, so too would it be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary."*

519 U.S. at 39–40, 117 S.Ct. 417 (emphasis supplied).

■ If the Due Process Clause does not impose on the police any obligation to advise a suspect about the consequences of, in effect, waiving his Fourth Amendment rights, *a fortiori,* it does not impose an obligation to advise with respect to some of the secondary consequences of exercising a statutory option that is only a matter of legislative grace. There is no constitutional right not to have one's blood tested for its alcoholic content. *Schmerber v. California,* 384 U.S. 757, 86

S.Ct. 1826, 16 L.Ed.2d 908 (1966). Giving the suspect any option as to testing is only a matter of statutory grace.

As a further alternative holding, we conclude that, even if, *arguendo*, the appellee possessed a right to have an additional chemical test by a physician of his own choosing, there was no constitutional obligation on the police to advise him of such a right.

## Level III Analysis:

### The Sanction of Dismissing Charges

■ Although our holdings are unequivocal 1) that the appellee possessed no right under Courts and Judicial Proceedings Article, § 10–304(e) in this case; and 2) that, even assuming such a right, the appellee possessed no entitlement, statutory or constitutional, to be advised of such an assumed right, we will, for purposes of our final inquiry, make the *arguendo* assumption that he possessed a right at both of those levels.

Even in that event, the dismissal of the charges would be an unjustifiably severe sanction. Even when police interrogation methods violate the Fifth Amendment privilege against compelled self-incrimination, the sanction is only the exclusion of the confession and not the dismissal of charges. *Miranda v. Arizona, supra; Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Even when police interrogation methods violate the Sixth Amendment right to the assistance of counsel, the sanction is only the exclusion of the confession and not the dismissal of charges. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Even when the police violate the Fourth Amendment right to be free of unreasonable searches and seizures, the sanction is only the exclusion of the physical evidence and not the dismissal of charges. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Even when police identification procedures violate the Sixth Amendment right to counsel at a lineup or an impermissibly suggestive procedure violates the Fourteenth Amendment, the sanction is only the exclusion of the

identification and not the dismissal of charges. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

In *Sites v. State,* 300 Md. 702, 481 A.2d 192 (1984), the controversy was over the results of a chemical sobriety test under circumstances in which the police had arguably violated Sites's due process right to communicate with his attorney. Even assuming such a constitutional violation, the sanction would still only be the suppression of the test results.

> *Where that right is plainly violated,* and the individual submits to the test, we think *the only effective sanction is suppression of the test results* where adverse to the defendant.

300 Md. at 718, 481 A.2d 192 (emphasis supplied).

At the most fundamental level, the appellee is arguing that the police failed to comply with the requirements of Courts Article, § 10–304(e). Section 10–309 of the same subtitle, however, makes it very clear that the sanction for non-compliance with the provisions of the subtitle is the exclusion of the results of the chemical test.

> Except as provided in § 16–205.1(c) of the Transportation Article, a person may not be compelled to submit to a test or tests provided for in this subtitle. *Evidence of a test or analysis is not admissible* in a prosecution for a violation of § 21–902 of the Transportation Article *if obtained contrary to its [the subtitle's] provisions.*

(Emphasis supplied). See also *State v. Loscomb,* 291 Md. 424, 435 A.2d 764 (1981).

The appellee attempts to argue before us that his lack of knowledge about having a test done by a physician of his own choosing may have compromised his ability to present an effective defense to the drunken driving charges. The very right for which the appellee contends, however, is one that exists only in the context of an initial test already administered by the State. There is no broad duty to advise a defendant as to how to prepare an effective defense. The

appellee has a right to prepare such a defense, of course, but the State has no duty to advise him with respect to it.

■ As our earlier discussion of interpretative guidelines makes clear, moreover, the provisions of §§ 10–301.1 through 10–309 were not "enacted for the protection of the accused." *State v. Moon,* 291 Md. at 477, 436 A.2d 420. The *arguendo* right to be advised about a test by a physician of one's own choosing, even assuming it to exist, would exist only in the context of an initial test actually conducted by the State. In such an event, but only in such an event, would a driver, even *arguendo,* be entitled to be advised of his right to an additional test. The purpose of such advice, in that very particularized context, would be one of fairness by way of balancing. The independent test may verify the results of the State test; it may, perhaps, counter the results of the State test.

The advice, even assuming it to be required, would be by way of balancing the scales. It would not be, in a vacuum, an advisement as to how to prepare a defense. If that balancing process should ever be interfered with, therefore, the appropriate remedy or sanction would be to deny the State the opportunity of introducing its test results. In no event would the sanction be one of precluding the State from proceeding with the prosecution of the charges, using whatever other evidence it might possess.

As a further alternative holding, we conclude that 1) even assuming a right and 2) even assuming an entitlement to be affirmatively advised of such a right, a violation would call for, at most, the exclusion of either 1) the results of a test actually conducted by the State or 2) the evidentiary use of the appellee's refusal to consent to such a test. In no event would the sanction be the dismissal of charges.

### Our Holding

On the basis of our conclusions at all three levels of analysis, or at any one of them alone, the ruling of the trial court that charges be dismissed must be reversed. On the basis of our conclusions at either the first or second level of analysis,

**514**

moreover, the case will not be remanded for the consideration of any lesser sanction, such as the suppression of the evidentiary use of the appellee's refusal to consent to the test requested by the State. We have held that the State was not guilty of violating any right possessed by the appellee. No sanction of any sort is called for.

**JUDGMENT REVERSED AND CASE REMANDED FOR TRIAL; COSTS TO BE PAID BY APPELLEE.**